UNITED STATES of America,
Plaintiff–Appellee,

v.

Elena BONTKOWSKI,
Defendant–Appellant.

No. 87–2921.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 20, 1988.

Decided Jan. 3, 1989.

As Amended on Denial of Rehearing
Feb. 10 and Feb. 15, 1989.

John L. Sullivan, Chicago, Ill., for defendant-appellant.

David A. Glockner, Asst. U.S. Atty. (Anton R. Valukas, U.S. Atty.), Chicago, Ill., for plaintiff-appellee.

Before BAUER, Chief Judge, CUDAHY and MANION, Circuit Judges.

BAUER, Chief Judge.

On May 27, 1987, Elena Bontkowski was arrested after selling a half-kilogram of cocaine to an undercover Drug Enforcement Administration (DEA) agent. She was charged with one count of attempting to distribute cocaine, in violation of 21 U.S. C. § 846, and three counts of distributing cocaine, each in violation of 21 U.S.C. § 841(a)(1). A fifth count, which charged her with conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846, was dismissed. After a jury trial, Bontkowski was found guilty on all four counts. On appeal, Bontkowski contends that the district court

erred in refusing to submit her proposed jury instructions on outrageous govermental conduct. She also contends that she was deprived of a fair trial on the basis of three instances of alleged misconduct by the prosecutor. For the following reasons we affirm Bontkowski's conviction.

## I.

In February of 1987, Fermin Gomez called the DEA and offered to provide information about someone he knew who was selling cocaine. After checking Gomez's background, the DEA enrolled him as an informant. On February 25th, Gomez brought undercover agent Tony Greco to Bontkowski's house and introduced them. Greco told Bontkowski he wanted to buy a gram of cocaine. Bontkowski called one of her sources (she said she had two—a Greek and a Latin). When the source failed to return her call, Greco left. On March 12th, Greco returned to Bontkowski's house, unaccompanied by Gomez. He bought twenty-two grams of cocaine and discussed buying larger amounts. At trial, Bontkowski testified that Gomez supplied her with the cocaine which she sold to Greco and that Gomez was upstairs during the sale. On March 26th, Greco bought forty-six grams of cocaine from Bontkowski and discussed buying a kilogram. Greco testified that Bontkowski told him that her ex-husband could supply a half-kilogram to a kilogram of cocaine. Bontkowski testified that, as in the March 12th transaction, Gomez supplied the cocaine for sale to Greco and remained upstairs.

After a two month interlude, the final transaction occurred on May 27th. Through Gomez, Greco had found out that Bontkowski thought he was a police officer, so Greco had ceased calling Bontkowski for a while. When Gomez told him that Bontkowski had obtained cocaine, Greco called her again. This time, Bontkowski sold Greco a half-kilogram of cocaine. As the exchange took place, Greco activated a silent transmitter and DEA agents entered the house and arrested Bontkowski. Once again Bontkowski testified that Gomez had supplied her with the cocaine which she sold to Greco, this time leaving it in the bushes outside her house.

After a jury trial, Bontkowski was found guilty of three counts (Counts II, III, and IV) of distribution of cocaine, each in violation of 21 U.S.C. § 841(a)(1), and one count (Count V) of attempted distribution of cocaine, in violation of 21 U.S.C. § 846. Bontkowski was sentenced to five years in the custody of the Attorney General on Counts II, III, IV, and V, to be followed by a six year period of supervised release. Pursuant to 18 U.S.C. § 3013, Bontkowski was also assessed a sum of $100.00 each on Counts II through V, for a total assessment of $400.00.

## II.

Bontkowski's first contention on appeal is that the district court erred as a matter of law in refusing to submit the issue of outrageous governmental conduct to the jury. Her argument has no merit. We have held that it is for the trial court, not the jury, to decide whether government conduct is so outrageous that due process bars the use of the judicial system to obtain a conviction. *United States v. Valona,* 834 F.2d 1334, 1343 (7th Cir.1987); *United States v. Shoffner,* 826 F.2d 619, 626 n. 9 (7th Cir.1987); *United States v. Swiatek,* 819 F.2d 721, 726 (7th Cir.1987). Foreseeing this, Bontkowski also asked us to review de novo the district court's conclusion that the government did not engage in outrageous conduct.

As an initial matter, we note that there is some doubt as to the validity of the outrageous-governmental-conduct doctrine. The doctrine stems from a statement in *United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1978), in which the Court noted that it might "some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." *Id.* at 431–32, 93 S.Ct. at 1642–43; *see also Valona,* 834 F.2d at 1343 (quoting *Russell,* 411 U.S. at 431–32, 93 S.Ct. at 1642–43). The import of this statement is

not certain, given the holding of the three-justice plurality in *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976). The *Hampton* plurality held that "[t]he remedy of the criminal defendant with respect to acts of government agents, which far from being resisted, are encouraged by him, lies solely in the defense of entrapment." *Id.* at 490, 96 S.Ct. at 1650. *See also United States v. Williams*, 858 F.2d 1218, 1225 (7th Cir. 1988) (quoting *Hampton*, 425 U.S. at 490, 96 S.Ct. at 1650).

Whatever the current status of this doctrine,

an examination of the post-*Hampton* cases decided by courts of appeals indicates that due process grants wide leeway to law enforcement agencies in their investigation of crime. Assuming that no independent constitutional right has been violated, governmental conduct must be truly outrageous before due process will prevent conviction of a defendant.

*United States v. Kaminski*, 703 F.2d 1004, 1009 (7th Cir.1983). On appeal, Bontkowski has not even designated the conduct which she alleges is outrageous. We assume that she is unhappy because Gomez supplied her with the cocaine which she sold to Greco. The government did not supply the cocaine, nor is there any evidence that the government knew that Gomez was supplying the cocaine. (In her conversations with Greco, Bontkowski referred to three different suppliers—a Greek, a Latin, and her ex-husband.) We have found that much more serious allegations do not constitute outrageous conduct. For example, even where the government pre-targets a defendant, furnishes a sample, and provides a contingent fee for the informant, such conduct does "not call for the activation and application of the outrageous conduct concept." *Valona*, 834 F.2d at 1348. Bontkowski's allegation of outrageous governmental conduct, therefore, is without merit.

Bontkowski's second argument on appeal is that the government's failure to return, and subsequent destruction of, her address and date books deprived her of a fair trial. After trial, Bontkowski filed a civil motion for an accounting of property. The government's reply to her motion stated that Greco had destroyed these books because he found his home telephone number in one of them. On appeal, Bontkowski alleges that this evidence was crucial to her defense. At trial, Bontkowski testified that Greco told her his last name. Greco testified that he did not tell her his last name nor give her his home telephone number. In closing argument, the government argued that Bontkowski lied under examination, and cited her testimony about Greco's last name as an example. Bontkowski alleges that the existence of Greco's home telephone number establishes that she knew his last name and would have restored her credibility.

One of the elements of a fair trial is a "meaningful opportunity to present a complete defense. To safeguard that right, the Court has developed 'what might loosely be called the area of constitutionally guaranteed access to evidence.'" *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413 (1983) (quoting *United States v. Valenzuela–Bernal*, 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed. 2d 1193 (1982)). However, not all evidence must be turned over to the defense or preserved. The issue is whether the suppressed evidence may have affected the outcome of the trial. *United States v. Agurs*, 427 U.S. 97, 104, 96 S.Ct. 2392, 2398, 49 L.Ed.2d 342 (1976). "The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt.... This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial." *Id.* at 112–13, 96 S.Ct. at 2401–02.

In light of the case against Bontkowski, it is evident that the existence of Greco's phone number in Bontkowski's address book would not have affected the outcome of her trial. Bontkowski does not dispute that she sold cocaine to Greco three times

and once attempted to sell it. She presented two defenses at trial, outrageous governmental conduct and coercion. Whether or not Greco gave Bontkowski his home telephone number is simply irrelevant to either defense. With respect to the credibility issue, resolution (assuming that the existence of Greco's telephone number in her address book leads to the conclusion that Bontkowski knew his last name) of this one inconsistency is insufficient to change a jury's mind about Bontkowski's credibility as a witness.

■■■ Bontkowski's third argument on appeal is that the government improperly questioned Greco and thereby deprived her of a fair trial. The government asked whether "hand-to-hand buy" drug cases are the DEA's strongest type of case. Defense counsel objected and the district court sustained the objection. Further on in the questioning, the government asked the same question. Once again Bontkowski contends that she was deprived of a fair trial, this time because the government's question went to one of the ultimate issues of the case which the jury should have decided.

In evaluating a claim of prosecutorial misconduct, the Court must determine "whether the prosecutor's statements 'were so inflammatory and prejudicial to defendant-petitioner as to deprive him of a fair trial and thus deprive him of his liberty without due process of law.'" *United States v. Dominguez*, 835 F.2d 694, 699 (7th Cir.1987) (quoting *United States v. Zanin*, 831 F.2d 740, 742 (7th Cir.1987)). In light of all of the evidence against her, we again fail to find any merit in Bontkowski's contention that she was deprived of a fair trial.

■■■ Bontkowski's last argument on appeal is that she was deprived of a fair trial because Gomez, whom she called as a defense witness, committed perjury on direct examination. Gomez testified, among other things, that he did not know Greco was a DEA agent and that he was not an informant. On cross-examination by the government the next day, Gomez recanted most of his direct testimony. In response to the government's question about why he lied on direct, Gomez answered that he was afraid of Bontkowski and her ex-husband. Bontkowski argues that the government had a duty to prevent Gomez from lying and that she was prejudiced by the testimony of Gomez, which would have been inadmissible but for Gomez's perjury the day before.

It is well established that a conviction obtained through false evidence, "known to be such," by the government, violates due process. *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959). In particular, the government must correct the false testimony of a government witness,[1] whether the testimony is elicited upon direct examination by the prosecutor, *Napue*, 360 U.S. 264, 79 S.Ct. 1173; *United States v. Bigeleisen*, 625 F.2d 203 (8th Cir.1980); *United States v. Barham*, 595 F.2d 231, 241 (5th Cir.1979), or whether elicited upon cross-examination by defense counsel. *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Brown v. Wainwright*, 785 F.2d 1457 (11th Cir.1986); *Barham*, 595 F.2d at 241. Bontkowski's conviction, however, does not rest upon the government's use of false evidence. During cross-examination the government revealed Gomez's perjury, and Gomez then recanted his direct testimony of the previous day. Bontkowski does not dispute that the government corrected Gomez's testimony.

The important issue in this case, according to Bontkowski, is the question of timing. Her argument goes something like this: if the government had stepped forward during Gomez's direct examination and corrected the perjury right away, the government would not have been able to benefit from his false testimony by asking

---

1. Bontkowski argues that Gomez was a government witness, even though he was called as a defense witness, because Gomez was a paid DEA informant. The government argues that Gomez is a defense witness because he was called by the defendant. Because the outcome of this appeal will not be affected whether we hold that Gomez was a defendant witness or a government witness, we will accept Bontkowski's contention for the sake of argument.

**134**

him on cross-examination why he perjured himself. This argument has merit. The government knew Gomez was lying during direct testimony and should not have allowed Gomez to continue so testifying. *See United States v. Sanfilippo*, 564 F.2d 176, 178 (5th Cir.1977) ("prosecutor may have been obliged to step forward and set the record straight when (the witness) persisted in misrepresenting the government's promise despite repeated efforts by defendant counsel to elicit the truth"). If the government had put a quick end to Gomez's perjury, then any questioning about why Gomez lied for a day and a half would have been irrelevant. Gomez's answer, that he was afraid of Bontkowski and her ex-husband, could have been prejudicial to a defendant in other circumstances. *See e.g., Dudley v. Duckworth*, 854 F.2d 967 (7th Cir.1988) (admission of evidence that witness was afraid of defendant and had received threatening phone calls amounted to denial of fundamental fairness).

Although the government's conduct was improper, it did not deprive Bontkowski of a fair trial. As we previously mentioned, Bontkowski presented two defenses at trial. With respect to her outrageous governmental conduct defense, evidence that a witness is afraid of the defendant is irrelevant. With respect to her coercion defense, Gomez's single statement was not prejudicial in light of the complete testimony of both Gomez and Bontkowski. Thus Bontkowski's fourth argument on appeal again fails to demonstrate that she was deprived of a fair trial.

For all of the foregoing reasons, the judgment of the district court is

AFFIRMED.