**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Johnny Lester COLSTON,**
**Defendant–Appellant.**

No. 90–1786.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 24, 1991.

Decided July 3, 1991.

Patrick S. Layng, Asst. U.S. Atty., Criminal Div., Barry R. Elden, Asst. U.S. Atty., Criminal Receiving, Appellate Div., Chicago, Ill., for plaintiff-appellee.

William H. Theis, Chicago, Ill., for defendant-appellant.

Before WOOD, Jr., and RIPPLE, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

FAIRCHILD, Senior Circuit Judge.

Johnny Lester Colson[1] was convicted of possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1), and sentenced to fifteen years incarceration. He appealed his conviction and his sentence.

## FACTS

According to the evidence at trial, Johnny Colson and his brother, Kevin Colson, were selling jewelry out of their car at a gas station on October 10, 1988. Lee Skenadore, the government's key witness, and some of his friends purchased some jewelry from the Colsons, and they believed that the jewelry was real gold. The next day, October 11, a jeweler told them that it was not actual gold. That night, they again saw the Colsons at the gas station where they had purchased the jewelry. While Mr. Skenadore remained in the car, two of his friends approached the Colsons.

It seems clear that after a conversation a shot was fired at the gas station. Then the Colsons got in their car with Johnny driving and speedily drove north. Police officers who heard the shot came on the scene almost immediately and gave chase. They stopped the Colsons within three blocks, after they turned east on Dickens Street. The police found the gun which Johnny is charged with possessing on the floor near the gear shift between the driver's and passenger's seats.

Mr. Skenadore, aged seventeen, testified that while members of his group were talking with Kevin Colson, Johnny Colson went around the Colsons' white Datsun and got a gun out of its back seat. He never qualified or contradicted this portion of his testimony. Standing alone it would be adequate support for the finding that Johnny possessed the gun, whether or not the officers' later observation of the gun on the floor of Johnny's car and apparently within his reach would be sufficient. Problems of inconsistency in parts of Skenadore's testimony and earlier statements will be discussed in connection with Johnny's argument that he was entitled to a judgment of acquittal or, alternatively, a new trial.

The government also presented evidence to prove that Johnny Colson was a convicted felon and that the gun had traveled in interstate commerce.[2] The judge instructed the jury on theories of actual, constructive, and joint possession. The jury found the defendant guilty. The district court judge entered judgment on the verdict and sentenced the defendant to fifteen years imprisonment, the minimum under the statute for a defendant who has three prior convictions of violent felonies. 18 U.S.C. § 924(e)(1). Defendant challenges two of the earlier convictions relied upon.

## DISCUSSION

The defendant has presented five issues for review. Four of these concern Mr. Skenadore's testimony, and the fifth concerns sentencing.

■ First, the defendant argues that Mr. Skenadore's testimony was inherently in-

---

1. The defendant was indicted under the name "Colson," and this appeal was docketed under the name "Colston." Throughout the proceedings below, after indictment, the defendant was referred to under his true name "Colson."

2. The indictment charged defendant, previously convicted, with knowing possession of a firearm which had previously traveled in interstate commerce in violation of 18 U.S.C. § 922(g)(1). That section makes it unlawful for a convicted felon "to ... possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." Defendant does not challenge the sufficiency of the indictment or of the evidence concerning interstate commerce. *See United States v. Lowe*, 860 F.2d 1370, 1373 (7th Cir. 1988), *cert. denied*, 490 U.S. 1005, 109 S.Ct. 1639, 104 L.Ed.2d 155 (1989).

credible, so there was insufficient evidence to sustain the guilty verdict. Mr. Skenadore gave several different versions of the events. On direct examination he testified that while his friends talked to Kevin Colson, the defendant got a gun out of his car and fired a shot. Then the Colsons got into their car and drove away, with the defendant driving. Two police officers arrived at the gas station about twenty seconds after the shot was fired. These police officers followed the defendant's car and stopped it on Dickens Street.

On cross examination, counsel for the defendant asked Mr. Skenadore if he had previously said that Kevin Colson was the one who shot the gun. Mr. Skenadore surprised both parties and answered that Kevin Colson did shoot the gun, but he shot it on Dickens Street after the defendant had fired the first shot and after they had left the gas station. Counsel for the defendant then asked Mr. Skenadore whether he had ever told the police or prosecutors about the second shot. Mr. Skenadore initially said he had not told anyone about the second shot before his testimony in court, but he later said he told the police about the second shot both when they arrested the Colsons and the day before trial. He added that at those times he told the police that the passenger, Kevin Colson, had also fired the first shot. Mr. Skenadore said he never told the prosecutors about the second shot, and he said he had previously told them that Kevin Colson fired the first shot. On recross examination, Mr. Skenadore explained that the only shot he ever told the prosecutors about was the second shot; he never told them about the shot at the gas station. Mr. Skenadore's testimony also contained other inconsistencies which are not directly relevant to this appeal.

Both police officers who arrested the Colsons testified that they heard only one shot and that shot came from the gas station. The chase by the police was short, and they were at all times close enough to the Colsons to hear a second shot. They said that Mr. Skenadore never told them about a second shot. An agent from the Bureau of Alcohol, Tobacco and Firearms testified that she had been with the prosecutors when they had interviewed Mr. Skenadore. She said Mr. Skenadore had told them about a shot fired at the gas station and had never said anything about a second shot.

All this may suggest that Skenadore remembered at the time of trial that the defendant fired the shot at the gas station and that when confronted with his earlier inconsistent statement that Kevin fired it he made an ill advised attempt at rehabilitation by fabricating a second shot, on Dickens Street, fired by Kevin. Then he found himself impelled to make inconsistent and contradicted claims about what he told the officers and agents.

According to the defendant, Mr. Skenadore's testimony requires reversal because a rational jury could not find a second shot was fired. Although the defendant's conviction does not depend on whether a second shot was fired, he argues that this testimony is inseparable from the testimony that he had possession of the gun.

■ This argument must fail because the jury could have believed Mr. Skenadore's testimony that the defendant took the gun out of the car, and thus had possession of it, without believing that two shots were fired. Generally, juries may reject parts of a witness's testimony while accepting other parts. *United States v. Blasco,* 581 F.2d 681, 685 & n. 10 (7th Cir.), *cert. denied,* 439 U.S. 966, 99 S.Ct. 456, 58 L.Ed.2d 425 (1978). The defendant, however, relies on *United States v. Chancey,* 715 F.2d 543 (11th Cir.1983), for the proposition that one part of a witness's testimony can render another part inherently incredible. In *Chancey,* a witness testified that she was forcibly taken from her home by the defendant and taken across the country, but she also testified that she did not take advantage of many opportunities to escape or to alert people that she was being kidnapped and that she voluntarily engaged in repeated sexual intercourse with the defendant. *Id.* at 544–46. *Chancey* is distinguishable from the instant case because in that case the facts described as to what occurred after the initial abduction

"simply cannot pass muster in the reasonable mind that an individual is being detained and transported against his or her will." *Id.* at 547. In this case, Mr. Skenadore's testimony about a second shot is inconsistent with other evidence about a second shot, but one can easily believe that the defendant possessed a gun without believing that a second shot was fired or that the defendant fired the one at the gas station. Although Mr. Skenadore's testimony about the second shot and his statements to the police raise questions about his credibility, we will question a jury's credibility determinations only in exceptional circumstances. *United States v. Dunigan,* 884 F.2d 1010, 1013 (7th Cir.1989).

The defendant's second argument is that Mr. Skenadore's testimony was so thoroughly impeached that it was an abuse of discretion not to grant a new trial. This argument is closely related to the first, but in arguing for a new trial rather than a judgment of acquittal, the defendant focuses on the weight of Mr. Skenadore's impeached testimony rather than on inherent incredibility.

New trials based on the weight of the evidence should be granted only when the evidence is "heavily against the verdict," *United States v. Reed,* 875 F.2d 107, 113 (7th Cir.1989), and this is not such a case. A rational jury could have found that the defendant possessed the gun. Mr. Skenadore consistently stated that the defendant retrieved the gun from his car. Other evidence also supports this testimony. The police testified to hearing a gunshot, and within a minute of the shot Mr. Skenadore and his friends told the police that "they were just shot at by the white Datsun going north on Pulaski." When the police stopped the defendant's car, they recovered a gun which contained only one spent casing and four or five live ones. Furthermore, the jury could have relied on a constructive possession theory to convict the defendant regardless of whether he actually handled the gun himself. *United States v. Garrett,* 903 F.2d 1105, 1110–11 & n. 5 (7th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 272, 112 L.Ed.2d 227 (1990).

The third issue raised by the defendant is whether he was denied due process of law because the government relied on Mr. Skenadore's perjured testimony. The defendant admits that the government was surprised by Mr. Skenadore's testimony as much as the defense was, but the defendant claims the prosecutors' response to perjury amounted to prosecutorial misconduct.

The defendant relies on two assertions which he believes are false: (1) two shots were fired; and (2) Mr. Skenadore never told the prosecutors about the shot fired at the gas station. A prosecutor has an obligation to notify the court whenever he knows that a witness has committed perjury, *United States v. Bontkowski,* 865 F.2d 129, 133 (7th Cir.1989); *United States v. Foster,* 874 F.2d 491, 495 (8th Cir.1988), but failure to notify is a basis for reversal only if it affects the fairness of the trial, *Bontkowski,* 865 F.2d at 133; *United States v. Barham,* 595 F.2d 231, 242 (5th Cir.1979). Even if these statements were perjury and obliged the prosecutors to alert the court as soon as they were made, the prosecutors' failure to do so did not affect the fairness of the trial. The cross examination of Mr. Skenadore combined with the defense's direct examination of Agent Beane alerted everyone to the probability that only one shot was fired and that Mr. Skenadore lied about what he had told the prosecutors. The jury and judge knew all that the prosecutors knew about whether Mr. Skenadore was lying and learned it at almost the same time. In these circumstances, the fact that the government did not alert the judge to any conclusion it reached that perjury was occurring could not have been prejudicial.

The defendant argues that the prosecutors improperly continued to rely on Mr. Skenadore's testimony after they knew of his perjury. The prosecutors, however, never relied on the parts of Mr. Skenadore's testimony which are alleged to be perjured. They stressed that Mr. Skenadore had consistently said the defendant retrieved the gun from the car and that this testimony was supported by other evi-

dence. The defendant believes that the prosecutors should not have relied on any of Mr. Skenadore's testimony because all of his testimony was affected by the perjury. As we discussed above, however, nothing prevents Mr. Skenadore's testimony from being considered in discrete parts, and the prosecutors were entitled to rely on those parts of his testimony that were not, to their knowledge, perjured.

■ The fourth issue is whether the district court judge erred in admitting hearsay testimony. During his testimony, Mr. Skenadore testified that the jewelry he and his friends bought from the Colsons was not real. The judge ruled that this was not hearsay, because it was not admitted for the truth of the matter asserted; it was admitted to show the state of mind of Mr. Skenadore and his friends when they approached the Colsons on October 11. Fed. R.Evid. 801(c). This evidentiary ruling was not an abuse of discretion. *See United States v. Herrero*, 893 F.2d 1512, 1530 (7th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 2623, 110 L.Ed.2d 644 (1990). The judge admitted the evidence only as background information and his decision that Skenadore's state of mind would help the jury understand the case was within his discretion.

■ The defendant also argues that the prosecutors used the evidence improperly in their closing arguments when they argued that the Colsons were selling fake jewelry and ripping people off. The prosecutors, however, based this argument on circumstantial evidence: the Colsons were selling jewelry out of their car at a gas station. Whatever the strength of the inference that the jewelry was fake, it was adequate to support an argument that it was. As to Mr. Skenadore's testimony concerning the jeweler's opinion, the court had offered an instruction appropriately limiting the use of that evidence, and the defendant's lawyer had failed to follow up the offer.

The fifth issue concerns sentencing. In order to obtain a fifteen year minimum sentence, the government had to prove that the defendant had been convicted of three previous violent felonies. 18 U.S.C. § 924(e)(1). The government offered five prior convictions of Johnny Colson, some of them under other names. Defendant contended that three of them rested upon guilty pleas which were not shown to be voluntary and intelligent. Judge Plunkett resolved that claim as to the conviction dated November 12, 1976. Defendant offered no objection to the conviction dated November 30, 1976. He does challenge consideration of the conviction dated April 1, 1980, on the ground that it was a conviction of a Robert Sullivan and that the evidence offered to show that Johnny Colson is the same person was inadmissible and unreliable. These were the three convictions necessary for enhancement, and Judge Plunkett did not examine the other two.

The defendant claims that his November 12, 1976, conviction cannot be counted for enhancement because his guilty plea was not shown to be intelligent and voluntary. He argues that it did not conform to the federal constitutional standards stated in *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), nor to Illinois Supreme Court Rule 402, Ill.Rev.Stat. ch. 110A, para. 402 (1970). In each case, he relies upon the absence of an explicit reference to his right to confront his accusers as a right he would waive by a plea of guilty.

■ As to the state standard, it is not clear that Rule 402 requires more than *Boykin*. If it did, we think a violation of the additional state standard would be irrelevant for the present purpose. Defendant has cited a decision of the Sixth Circuit which refused to count a state conviction for the purpose of the Sentencing Guidelines where there was a plea in violation of a state rule. *United States v. Bradley*, 922 F.2d 1290, 1297 (6th Cir.1991). We have also considered Judge Shadur's discussion of the possible application of state standards (Illinois Rule 402, as here) in determining that a state conviction based on a guilty plea should be disregarded for enhancement. *United States v. Henry*, 713 F.Supp. 1182, 1184 n. 3, 1190–91 (N.D. Ill.1989), *aff'd*, 933 F.2d 553 (7th Cir.1991).

However, the decisions of this court on the subject focus on violations of the federal constitution. *E.g., United States v. Henry,* 933 F.2d 553, 559 (7th Cir.1991);[3] *United States v. Wilson,* 922 F.2d 1336, 1340 (7th Cir.1991); *United States v. Gallman,* 907 F.2d 639, 642 (7th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 1110, 113 L.Ed.2d 219 (1991). We continue to regard that as the appropriate view, keeping narrow this particular species of collateral review of court judgments.[4]

▪ Turning to defendant's argument that the plea was invalid under *Boykin* because his right to confront witnesses was not explicitly mentioned, we have held that "the failure to advise a defendant of each right enumerated in *Boykin* does not automatically invalidate the plea." *Henry,* at 559. In *United States ex rel. Miller v. McGinnis,* 774 F.2d 819 (7th Cir.1985), a *habeas* case, we held that the court's failure to advise a defendant of his right to confront accusers, and of his privilege against self-incrimination, coupled with other failures, made the plea invalid on *Boykin* grounds. Citing, however, the holding in *United States v. Dorszynski,* 484 F.2d 849, 850–51 (7th Cir.1973), *rev'd on other grounds,* 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974), that there need not be a ritualistic question concerning the waiver of the privilege against self-incrimination, the *Miller* court acknowledged that "[w]ere we to consider any one of these additional allegations of error in isolation, we might agree with the district court that they were mere 'technical violations.'" *Miller,* 774 F.2d at 825.

In the case before us, the record includes a four page colloquy between the judge and defendant and several additional questions, later on, again inquiring about defendant's desire to plead guilty. The judge ascertained that defendant understood the charges and the consequences, that there had been no force or threats, and that no one had made promises except those included in a plea bargain, which the court fulfilled. There were also questions and answers showing defendant's understanding that by pleading guilty he would give up his right to remain silent, his right to a jury trial, and a trial of any kind. There were explicit references to the rights just mentioned, but not to the right to confront accusers. The judge had, however, briefly described a jury trial. Referring to the twelve jurors who would sit in the jury box, he said, "When the evidence is produced, they will listen to it and they will decide whether or not the state has proven you guilty as required by law." Although the court did not refer to the defendant's right to cross examine state witnesses, it is hard to believe that he did not realize that in pleading guilty he was waiving confrontation of accusers as well as the other rights mentioned.

We conclude that the record included an affirmative showing that the plea was intelligent and voluntary as required by *Boykin.*

▪ The defendant argues that the April 1, 1980, conviction was not proven to be his. Judge Plunkett admitted documents compiled by the Illinois Department of Corrections as business records. Fed.R.Evid. 803(6). These documents tended to show that one person named Robert Sullivan (aka Johnny L. Colson) was in custody, having been sentenced on the dates and in the case numbers pertinent to both the April 1, 1980, conviction and other convictions concededly involving Colson. Defendant relies upon the practice of the Illinois prison system to fingerprint an inmate each time he enters the system, and the fact that although there is a fingerprint card taken upon Colson's arrival at the prison under the November 12 and 30,

---

3. The *Henry* court did note Illinois Rule 402 and held that "the district court's finding that Henry's . . . pleas substantially complied with Rule 402 was not clearly erroneous." *Henry,* at 561. It also said, "For a conviction to count for enhancement purposes, it must have been constitutionally obtained." *Id.* at 559.

4. There is no question that federal court *habeas* review of state court convictions is limited to federal constitutional error. *Bell v. Duckworth,* 861 F.2d 169, 170 (7th Cir.1988), *cert. denied,* 489 U.S. 1088, 109 S.Ct. 1552, 103 L.Ed.2d 855 (1989).

1976, sentences, the government did not offer a fingerprint card for the prisoner who entered under the April 1, 1980, sentence. Judge Plunkett correctly ruled that fingerprint evidence was not essential. The other records sufficed and the defense provided no reason for doubting the accuracy of the business entries.

Accordingly, the judgment of the district court is AFFIRMED.