**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 95-5740

FREDERICK ANTHONY CARGILL,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 95-5741

WILBERT ANTHONY NEAL,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 95-5777

RONALD CHRISTOPHER NEAL,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 95-5871

CHRISTOPHER LEE NEAL,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 97-4428

CHRISTOPHER LEE NEAL,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 97-4429

WILBERT ANTHONY NEAL,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 97-4430

RONALD CHRISTOPHER NEAL,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 97-4434

FREDERICK ANTHONY CARGILL,
Defendant-Appellant.

Appeals from the United States District Court
for the Middle District of North Carolina, at Greensboro.
James A. Beaty, Jr., District Judge.
(CR-94-300)

2

Argued: October 28, 1997

Decided: February 2, 1998

Before WILKINS and MICHAEL, Circuit Judges, and
CAMPBELL, Senior Circuit Judge of the
United States Court of Appeals for the First Circuit,
sitting by designation.

_____

Vacated and remanded by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** John Joseph Korzen, SMITH, HELMS, MULLISS &
MOORE, L.L.P., Greensboro, North Carolina; Lawrence Jay Fine,
Winston-Salem, North Carolina, for Appellants. Paul Alexander
Weinman, Assistant United States Attorney, Greensboro, North Caro-
lina, for Appellee. **ON BRIEF:** Lisa S. Costner, LISA S. COSTNER,
P.A., Winston-Salem, North Carolina, for Appellant Ronald Neal;
Danny T. Ferguson, Winston-Salem, North Carolina, for Appellant
Christopher Neal. Walter C. Holton, Jr., United States Attorney,
Greensboro, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Wilbert Anthony Neal, Christopher Neal, Ronald Neal, and Freder-
ick Cargill ("defendants") were indicted in January 1995 for conspir-
acy to distribute crack cocaine in Rockingham County, North

Carolina. Christopher Neal was also charged with three other drug-related offenses. After a five-day trial in May 1995, defendants were found guilty of all the charges against them. They received sentences ranging from 292 months to life in prison.

On appeal, defendants raise several issues, including a claim that the district court improperly denied their motion for a new trial. In that motion defendants alleged that Lee Settle, the government's principal witness and an alleged co-conspirator of defendants, had lied on the stand by denying his heavy involvement with a rival drug dealer. Defendants claimed that the prosecutor knew of Settle's alleged perjury but failed to notify them or the court about it. Defendants urged that the prosecutor's inaction constituted misconduct which denied them a fair trial.

When it decided the new trial motion, the district court did not make any findings as to whether prosecutorial misconduct actually occurred. In the absence of that factfinding, and for other reasons, we cannot determine whether the district court employed the appropriate standard in evaluating whether defendants were denied a fair trial. As a result, we vacate the district court's order denying the motion for a new trial and remand for reconsideration of that motion.

I.

In their motion defendants alleged the following facts. Before defendants were tried, Lee Settle pled guilty to an unrelated charge of conspiracy to distribute crack cocaine. The indictment to which he pled stated that he had conspired with Larry Angelo"Todd" Johnson, another drug dealer who also operated in Rockingham County. See Supp. App. ("S.A.") 8-9, 13, 17. Johnson was prosecuted by the same Assistant United States Attorney ("AUSA") who later prosecuted defendants.

At Johnson's trial the AUSA put on two witnesses, Robert Reid and Tracy Taylor, who testified about Johnson's activities with Settle, whom they knew as "Supreme." Taylor testified that Settle had once collected some money from her to pay her brother's drug debt to Johnson. See S.A. 35-36. She also claimed that Johnson told her that he and Settle had made drug runs to Florida together. See S.A. 36.

4

Further, Taylor identified a picture of Johnson and Settle together in Florida. See S.A. 35. Reid testified that Johnson and Settle had come to his house and threatened him if he testified at Johnson's trial. See S.A. 31-34. Further, after Johnson was convicted, his presentence report revealed that he had obtained crack from Settle on at least three occasions. See S.A. 41.

When Johnson appealed his sentence (specifically, his upward adjustment for leading or organizing five or more people), the same AUSA who prosecuted him urged this court to credit Reid and Taylor's testimony about Johnson's involvement with Settle. The AUSA pointed to Reid's testimony that Settle had collected a drug debt for Johnson and to Taylor's testimony that Settle had helped obstruct Johnson's prosecution by threatening Reid if he testified against Johnson. See S.A. 43. This evidence, the AUSA argued, "showed that [Settle's] role went well beyond" being simply Johnson's "hanging partner." Id. Thus, the AUSA contended, the district court had not clearly erred by enhancing Johnson's sentence for leading or organizing five people, including Settle.

Shortly after Johnson's appeal, Settle testified at defendants' trial in an attempt to gain a substantial assistance motion from the government. See S.A. 17. Settle claimed to be a major player in defendants' drug ring, and he offered the jury the inside story on defendants' alleged drug distribution activities. Settle told the jury that defendants had obtained cocaine by driving from Rockingham County to New York City. Settle claimed that he had gone along on some of these trips. Settle also explained that after these drug runs, defendants cooked their cocaine into crack, divvied it up amongst themselves, and sold it. Further, Settle testified that he attended meetings where the conspirators discussed their drug distribution business.[1]

While on the stand, Settle denied -- four times-- that he was an associate of Todd Johnson's. First, on cross-examination by Anthony Neal's counsel, Settle testified that he was not a partner with, and did

_____

[1] Two other witnesses, Thomas Williamson and Dean Padgett, also testified that defendants dealt in drugs. However, neither testified from the perspective of an insider. Williamson testified as a low-level dealer, and Padgett testified as a buyer.

5

not deal drugs regularly with, Johnson. Settle claimed that all he did was give Johnson an ounce of cocaine on one occasion. See J.A. 522. Second, on cross-examination by Cargill's counsel, Settle testified that he was not in the same drug-dealing operation as Todd Johnson. See id. Third, on redirect examination, when the AUSA asked Settle what his involvement with Johnson's drug ring was, Settle replied: "Basically, none." J.A. 608. All he did, Settle reiterated, was give Johnson an ounce of cocaine on one occasion to tide him over when his supply was low. See id. Fourth, on recross Settle testified, once again, that he was not a partner with Johnson. Settle also said that he did not know whether it was "simply a coincidence" that he was named in the same indictment as Johnson. See S.A. 11.

After Settle testified, the AUSA did nothing to suggest that he saw any inconsistency between Settle's testimony and Taylor and Reid's testimony. The AUSA did not indicate to the court that Settle could have lied. In addition, defense counsel claim that the AUSA did not advise them about Taylor and Reid's testimony or that he (the AUSA) previously had argued to this court that Settle was much more than Johnson's "hanging partner." In fact, the AUSA acted as if he believed that Settle had told the truth in defendants' trial: in closing argument he urged the jury to believe Settle's testimony because, although Settle had lied frequently in the past, he now had an incentive (i.e., the prospect of substantial assistance) to tell the truth. See J.A. 1460-62, 1474-75, 1545-46.

After their trial defendants moved for a new trial based on Taylor and Reid's "newly discovered" testimony.[2] They claimed that the AUSA should have informed them of this testimony because it would have showed that Settle perjured himself. Settle was the government's star witness, defendants argued, so the jury might not have convicted them had it known that Settle had lied at trial. Further, defendants argued that had the AUSA informed them of Taylor and Reid's testi-

_____

[2] At oral argument defendant Anthony Neal's counsel told us that he first became aware of Taylor and Reid's testimony when Cargill's appellate counsel, who had not been involved with the trial but who had been Johnson's counsel on appeal, read the trial transcript in this case and discovered Settle's alleged perjury. We need not address whether this evidence was, in fact, newly discovered.

6

mony, they could have used it to cast doubt on Settle's testimony. According to defendants, the evidence that Settle had traveled with Johnson to Florida to obtain drugs would have cast doubt on Settle's testimony that during the same time period he had traveled to New York with defendants to obtain drugs. Hence, defendants argued that the AUSA's alleged failure to inform them of Taylor and Reid's testimony denied them a fair trial.

In his response the AUSA denied that Settle had testified falsely. See S.A. 11-12. The AUSA argued that because Settle had admitted giving drugs to Johnson and had admitted being indicted along with Johnson, Settle had told the truth. See id.

The court denied defendants' motion without deciding whether prosecutorial misconduct occurred.

II.

If the district court concluded that a new trial was not warranted based on a correct application of the proper legal standard, then our review is for an abuse of discretion. See, e.g. , United States v. Singh, 54 F.3d 1182, 1190 (4th Cir. 1995). However, if the court used the wrong test or incorrectly answered the underlying legal question of whether certain conduct constituted misconduct, our review of its decision to grant a new trial is plenary. See United States v. Pelullo, 14 F.3d 881, 886 (3d Cir. 1994); see also United States v. O'Keefe, 128 F.3d 885, 893 (5th Cir. 1997); United States v. Noriega, 117 F.3d 1206, 1217-18 (11th Cir. 1997); United States v. Thornton, 1 F.3d 149, 158 (3d Cir. 1993); United States v. Marashi, 913 F.2d 724, 731-32 (9th Cir. 1990).

On appeal defendants claim that the district court erred in denying their motion because it applied the wrong test to determine whether their "newly discovered" evidence warranted a new trial. Defendants argue that the district court applied the test we set forth in United States v. Bales, 813 F.2d 1289 (4th Cir. 1987), for determining whether newly discovered evidence of innocence warrants a new trial. Under this test a new trial may be granted if five factors are satisfied: (1) the defendants set forth facts showing reasonable diligence in discovering new evidence; (2) the evidence was, in fact, discovered since

7

trial; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is of such a nature that it "would probably produce an acquittal." Bales, 813 F.2d at 1295. Defendants contend that the Bales test is properly applied only when evaluating newly discovered evidence that was unknown to both parties at the time of trial.

Defendants argue that the proper test to be applied in this case is the one originally set out in Brady v. Maryland , 373 U.S. 83 (1963), and later clarified in United States v. Agurs , 427 U.S. 97 (1976), United States v. Bagley, 473 U.S. 667 (1985), and Kyles v. Whitley, 514 U.S. 419 (1995). Under the Brady analysis, a new trial may be warranted if the prosecutor withholds material evidence favorable to the defendant, and there is a "reasonable probability" that with the favorable evidence the defendant would have obtained a different result at trial. See Kyles, 514 U.S. at 432-33. Defendants contend that the Brady test is applied when the government keeps favorable evidence from the defense. This standard applies here, they argue, because the AUSA knew that Taylor and Reid's testimony at the Johnson trial contradicted Settle's testimony at defendants' trial, but he (the AUSA) did not tell any of defendants' counsel about it. Moreover, defendants argue that the district court's error in applying the wrong test prejudiced them because the Brady test is significantly less stringent than is the Bales test.

On appeal the government does not dispute that the district court should have applied the Brady test. Rather, it argues that the district court did, in fact, apply the Brady test. Hence, the government contends that the court did not abuse its discretion in denying defendants' new trial motion.

We agree with defendants that, although both the Brady and Bales tests are used to evaluate newly discovered evidence, these two tests apply in different situations. Bales applies when neither the defendant nor the prosection knew of (or had possession of) the evidence at the time of trial. See, e.g., United States v. Custis, 988 F.2d 1355, 1358-59 (4th Cir. 1993); United States v. Chavis, 880 F.2d 788, 792-93 (4th Cir. 1989). Brady applies when evidence that is favorable to the defense is in the government's hands at the time of trial and is later discovered by the defense. See Kyles, 514 U.S. at 431, 432-33.

8

We also agree that application of the Bales test in situations where the Brady test is appropriate constitutes legal error. Bales places a heavier burden than Brady does on defendants who attempt to show that newly-discovered evidence is material. See Bagley, 473 U.S. at 680-81. Under Bales defendants must show that new evidence "would probably produce an acquittal" at a new trial, 813 F.2d at 1295, while under Brady the defendant only need show a "reasonable probability" of a different result, see Kyles, 514 U.S. at 434. A defendant claiming innocence under Bales must demonstrate by a preponderance that he would be acquitted with the new evidence, whereas under Brady defendants need only show that "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict," Kyles, 514 U.S. at 434. In short, while the outcome under the Bales analysis depends heavily on the sufficiency of the evidence, the Brady analysis is not a sufficiency test, see id. at 434-35.

In this case it is not clear whether the district court employed the Bales test or the Brady test, or both. The court began its analysis by quoting the Bales test. See S.A. 49. It then discussed two Bales factors, whether the evidence was cumulative or impeaching.**3** See S.A. 52-54. The trial court then mentioned Bales' requirement that defendants prove that the new evidence probably would produce an acquittal. S.A. 59. However, the district court also referred to Brady's less stringent "reasonable probability" standard, see S.A. 55, and concluded that there was no "reasonable probability that the additional testimony concerning Settle's involvement with Johnson would have affected the outcome of Defendants' trial," S.A. 59-60.

Since the district court discussed both Brady and Bales, we cannot determine which of these two standards it actually employed to evaluate defendants' motion. Moreover, we cannot determine which test was the proper one to apply in this case, because the district court made no findings regarding whether prosecutorial misconduct occurred.

_____

**3** Neither of these factors are central under the Brady analysis. Under Brady even suppression of cumulative impeachment evidence may warrant a new trial. See United States v. Kelly, 35 F.3d 929, 933 (4th Cir. 1994).

9

We note, however, that even if misconduct occurred, the Brady test might not be the proper standard for evaluating defendants' motion. Defendants alleged that Lee Settle committed perjury and that the government knew about it. A perjury case differs from a run-of-the-mill Brady claim in which the defendant merely alleges that the prosecution suppressed evidence favorable to the defense. In a perjury case the defendant claims that the prosecutor violated both his duty to turn favorable evidence over to the defense and his "constitutional obligation . . . to report to the defendant and to the court whenever government witnesses lie under oath," United States v. Endicott, 869 F.2d 452, 456 (9th Cir. 1989); accord United States v. Colston, 936 F.2d 312, 316 (7th Cir. 1991) ("A prosecutor has an obligation to notify the court whenever he knows that a witness has committed perjury."). The importance of this second duty has led the Supreme Court to distinguish between work-a-day Brady claims and those claims in which it is alleged that the prosecutor did not admit it when he knew that his witness lied under oath. See Kyles, 514 U.S. at 432-33 & 433 n.7; Bagley, 473 U.S. at 677-82; Agurs , 427 U.S. at 103-04.

Due to the greater seriousness of a claim that the government knowingly allowed perjury to pass, the Supreme Court applies a different test when evaluating these claims. In a perjury case the Court does not use the "reasonable probability" language that it uses to review Brady claims. Rather, a new trial is warranted in a perjury case if "`the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury,'" see Giglio v. United States, 405 U.S. 150, 154 (1972) (quoting Napue v. Illinois , 360 U.S. 264, 271 (1959)). Although the court has not explicitly stated that Giglio's "any reasonable likelihood" standard is less strict than the already defense-friendly "reasonable probability" standard, most circuits have so held (or suggested as much in dicta). See United States v. Steinberg, 99 F.3d 1486, 1490 (9th Cir. 1996); United States v. Gonzales, 90 F.3d 1363, 1368 n.2 (8th Cir. 1996); United States v. Alzate, 47 F.3d 1103, 1109-10 (11th Cir. 1995); Kirkpatrick v. Whitley , 992 F.2d 491, 497 (5th Cir. 1993); United States v. O'Dell, 805 F.2d 637, 641 (6th Cir. 1986); United States v. Kluger, 794 F.2d 1579, 1582 n.4 (10th Cir. 1986); United States v. Jackson, 780 F.2d 1305, 1309 (7th Cir. 1986); but see United States v. Boyd, 55 F.3d 239, 245 (7th Cir. 1995). This circuit, too, has suggested that the two standards differ, see United

10

States v. Sutton, 542 F.2d 1239, 1242 & n.3 (4th Cir. 1976), but we explicitly reserved the question in Kelly, see 35 F.3d at 936 n.10.

Today we have no reason to decide whether the Giglio test is less strict than the Brady test because the district court did not decide any of the factual questions that these cases raise (e.g., did Settle testify falsely, did the AUSA know, and did he inform the defense). Without this factfinding, we cannot decide which standard the court should have applied to determine whether to grant defendants' new trial motion.

"An appellate court is not the appropriate forum for the initial resolution of the question whether a Government witness perjured h[im]self during h[is] trial testimony or whether the Government [knew or] should have known of the perjury." Kelly, 35 F.3d at 935. Also, if Giglio should apply, "[i]t is the district court which should determine in the first instance whether or not [defendants'] new evidence is material under the more lenient . . . standard" of that case. United States v. Walgren, 885 F.2d 1417, 1428 (9th Cir. 1989). On the other hand, if Brady should apply, we believe (at least in this case) that the district court should take the first look at the new trial motion under that standard. See, e.g., United States v. Ferri, 778 F.2d 985, 997 (3d Cir. 1985). The district court viewed the trial in its entirety and heard all of the witnesses (including Settle, the alleged perjurer) testify.

We therefore remand to the district court for factfinding on the issues of misconduct raised by defendants. Then the court must determine whether defendants deserve a new trial by applying the proper standard. If the court determines that the prosecutor knowingly allowed perjury to pass uncorrected, it must apply the Giglio standard. See Walgren, 885 F.2d at 1427-28. If it decides that no perjury occurred but that the government suppressed evidence, then the court must apply the Brady test. See id. Or, if it decides that no prosecutorial misconduct occurred, then it must apply the Bales test. See id.

We vacate the district court's order denying defendants a new trial. We remand the case for reconsideration (in conformity with this opinion) of defendants' motion for a new trial.

VACATED AND REMANDED