## UNITED STATES v. BOURJAILY.
### No. 9431.

Circuit Court of Appeals, Seventh Circuit.
May 19, 1948.

George F. Callaghan, of Chicago, Ill., for appellant.

Otto Kerner, Jr., U. S. Atty., John J. Kelly, Jr., and Lawrence J. Miller, Asst. U. S. Attys., all of Chicago, Ill. (Bernard H. Sokol, Asst. U. S. Atty., of Chicago, Ill., on the brief), for appellee.

Before SPARKS and MAJOR, Circuit Judges, and DUFFY, District Judge.

DUFFY, District Judge.

The indictment herein contained 36 counts and charged that defendant and three others devised a scheme to defraud a class of persons or firms who advertised in newspapers for "help wanted." The general outline of the alleged scheme was that the defendants billed various persons and firms for unauthorized advertisements, and that said bills were falsified with respect to the amount of space used or the number of editions in which the advertisements allegedly appeared. It was further charged that the defendants used the United States mails for the purpose of executing and attempting to execute said scheme to defraud.

Prior to the trial the indictment was dismissed as to defendants Solomon and Israel, who thereafter appeared as witnesses for the government on the trial. At the conclusion of the government's case, on motion of the government, the defendant's husband was dismissed as a defendant. Nineteen counts were submitted to the jury, and the defendant was found guilty on twelve. Defendant made timely motions for judgment of acquittal and for a new trial.

There are numerous assignments of error, but in view of our disposition of the case consideration need only be given to two. The first alleged error concerns the testimony of Harry Breslaw and the action of the court in striking all of his testimony from the record. Breslaw was called by the government and on his direct examination gave exceedingly damaging testimony that at defendant's request he had billed certain companies for ads which were unauthorized or had never been published. On cross-examination he admitted that his testimony before the grand jury was entirely different than his testimony at the trial, both on direct and cross-examination, and he said he had lied to the grand jury.

At the convening of court on the following morning, defendant's counsel informed the court that the witness Breslaw, since he left the witness stand, had advised that he desired to correct certain statements he had made on the witness stand and that he was now in court; and counsel asked that Breslaw be called and permitted to correct those statements. The court asked whether there was any objection on the part of the government and the assistant United States attorney replied that the government had not been advised of the desire of witness Breslaw to change his statements, and the court then stated, "That being the circumstances, I will not grant your motion. If you care to call him as your witness, you may do so. * * *" Defendant's counsel then informed the court that Breslaw had called at the defendant's office the previous night, and told her that some of the things concerning which he had testified were not true, and that he desired to correct them. The court again ruled, "Unless he has advised the government, who called him as a witness, that he desires to correct his story, and they consent to put him on, the motion is denied." The assistant United States attorney then stated: "I don't think even if he advised us, if your Honor please, we would put him on." At the conclusion of the testimony of the witness on the stand following this colloquy, defendant's counsel moved that the witness Breslaw be recalled for further cross-examination which motion was likewise denied.

After the government rested its case, and the jury had retired, the court called Mr. Breslaw before the bar. Breslaw stated that he wished to retract just about everything he had said the previous day. He stated, "* * * I was under strain. I was also under advice, not by Mrs. Bourjaily or Mr. Bourjaily or Mr. Callaghan, but by Mr. Miller and Mr. Kelly (assistant United States attorneys). I was advised. I was also threatened, not once but twice, and once before the grand jury, which Mr. Callaghan brought out yesterday, and I

lied to him." Whereupon the following colloquy took place:

"The Court: Did you tell the truth to the grand jury at that time?

"Mr. Breslaw: Yes, I did. Every word I said at that time was the truth, the absolute truth.

"The Court: Every word you said yesterday in this court was a lie?

"Mr. Breslaw: Just about everything I said, that is, I answered Mr. Miller's questions just the way they wanted it answered; and Mr. Callaghan's questions which I should have answered truthfully, I lied about." The jury was then brought back into the courtroom and advised by the court as follows:

"The jury is now advised that the witness Breslaw advised the court at that hearing while you were out of the room and in your jury room substantially that he lied in his testimony yesterday before this court and jury in practically all respects; that although some of the answers on direct and cross-examination may have been true, in practically all respects both on cross and direct examination he lied.

"Accordingly, at this time the court having been thus informed by the witness, the jury is instructed by the court to disregard entirely the testimony of the witness Breslaw that you heard yesterday in this courtroom, and on the court's own motion the entire testimony of the witness Breslaw is stricken from this record."

Defendant's counsel objected to the striking of the testimony and asked that the witness be recalled to the stand as the court's witness for further examination about the things he had stated to the court. The motion was denied. Defendant's counsel once again asked leave to cross-examine Breslaw and that motion was likewise denied.

Thereupon, out of presence of the jury, the court sat as a committing magistrate and called Breslaw before it. Breslaw was asked whether he had any reason to offer why he should not be bound over to the grand jury and tried for perjury. He replied,

"* * * I was under advisement. I was also threatened under one indictment and threatened if I didn't appear in his office a marshal would come down and get me.

"That is why I was scared all the way through. I was nervous. * * *" The court then held Breslaw to the grand jury on a charge of perjury and ordered the marshal to take him into custody, whereupon the trial proceeded.

■ We think that the action of the court in refusing to permit further cross-examination of Breslaw and the striking of his entire testimony from the record was, under the circumstances, prejudicial error. When the court struck all of his testimony it struck the truthful along with the untruthful. Although most of his testimony confessedly was false, the court did remark to the jury that Breslaw had advised "* * * some of the answers on direct and cross-examination may have been true." The court thus made himself the sole judge of the credibility of the witness Breslaw and all of his testimony. However, this determination was for the jury, and the jury alone. Moreover, the court's action relieved the government of the onerous responsibility for the testimony of a confessed perjurer for whose credibility it had vouched.

■ The defendant was entitled to seek on cross-examination a full and complete disclosure of the interest and motives underlying the previous testimony of this witness whom the government had produced. The jury was entitled to judge the veracity of his claims of threats and promises by government representatives, and his claimed fear of prosecution if he did not testify as they desired. The action of the court deprived the defendant of these rights.

■ The whole interest of the government in any criminal case is not to win at any cost, but rather that justice shall be done. Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314. These representatives of the government had been accused of threats and unethical conduct by their own witness in open court. Instead of objecting, they should have insist-

ed upon a full hearing of Breslaw's claims. Had they not objected the court undoubtedly would have permitted the further cross-examination of Breslaw.

 The government contends, however, that the court did afford an opportunity to the defendant to make Breslaw her own witness. But Breslaw was a witness for the government. He had confessed giving false testimony. The defendant should not have been required, under these circumstances, to vouch for him as her witness. Furthermore, by the time defendant started to present her testimony to the jury, the government had laid its heavy hand upon him. He was in the custody of the United States marshal after being bound over to the grand jury on the charge of perjury.

The rights of which this defendant was deprived were fundamental and of substance. Resort may not be had to Title 28, U.S.C.A. § 391, which admonishes that on appeal "the court shall give judgment * * * without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties."

In as much as a new trial must be ordered, we deem it advisable to comment briefly upon another assignment of error, pertaining to the testimony of the witness Patano who had worked for the defendant as a collector of delinquent accounts. The jury was informed by Patano that he had talked on the telephone with a large number of unidentified persons and that from 600 to 700 of them had said their ads were unauthorized. All such testimony, the following of which is an example, was received over the vigorous objection that it was hearsay.

"Question: Of those 1,500 persons that you called would you be good enough to approximate for me a percentage of how many said they did not authorize the ad, if you can?

"Answer: I would say about one-fifth of those accounts would say they were not authorized. * * *

"Question: How many accounts that you called on for the Sandara, how many of those were there who told you that those accounts were not authorized?

"Answer: I would have to give you the same answer. I would have to guess. About a fifth.

"Question: A fifth of the 500 you called?

"Answer: Yes, that is guessing. I am not sure."

One of the essential elements which the government was seeking to establish was that the defendant had devised a scheme to collect for unauthorized ads. By means of the hearsay testimony heretofore quoted and other similar testimony, the government was permitted to submit for jury consideration the gist of alleged statements of hundreds of persons whom the defendant could neither confront nor cross-examine. This was error. See: Donnelly v. United States, 228 U.S. 243, 273, 33 S.Ct. 449, 57 L.Ed. 820, Ann.Cas.1913E, 710.

The judgment of the district court is reversed and this cause will be remanded for a new trial.