**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Darren C. THOMAS, Defendant–
Appellant.**

**No. 92–2370.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 2, 1992.

Decided March 9, 1993.

Rehearing and Rehearing En Banc
Denied June 2, 1993.

Stephen B. Clark, Asst. U.S. Atty., Ranley R. Killian, Jr., Office of the U.S. Atty., Crim. Div., Fairview Heights, IL, for plaintiff-appellee.

Joseph R. Brown, Edwardsville, IL, for defendant-appellant.

Before MANION and KANNE, Circuit Judges, and WILL, Senior District Judge.*

MANION, Circuit Judge.

A jury convicted Darren Thomas for possessing an unregistered sawed-off shotgun, 26 U.S.C. § 5861(d), and for being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1). Thomas appeals and we affirm.

Early in the morning of October 9, 1991, agents of the Bureau of Alcohol, Tobacco and Firearms executed a search warrant at the home of Rhonda Adams in East St. Louis, Illinois. In the home's master bedroom, the agents found Thomas lying on a waterbed. An agent asked Thomas if there were any weapons in the home. Thomas directed the agents to a drawer in the waterbed where they found a loaded Smith and Wesson .38 special pistol. Continuing with the search of the bedroom, the agents discovered a black attaché case concealed behind a chest of drawers. That attaché case contained two firearms: a Raven .25 caliber semiautomatic pistol and a sawed-off Shinn A Sipja 12–gauge shotgun. The attaché case also contained Thomas' savings deposit book.

Adams testified before the grand jury that Thomas was her fiance and had moved into her home in May 1991. Adams also told the grand jury that Thomas had brought a gun into the home for protection. According to Adams, Thomas kept the gun in a drawer in the waterbed. Adams further testified that Thomas had brought a black attaché case with him when he moved into her home.

The grand jury returned a four-count indictment against Thomas. The first two counts charged narcotics offenses that the government dismissed before trial; the other two counts charged the firearms offenses at issue in this appeal. Adams was scheduled to testify for the government at trial. But before the trial, Adams told Thomas' attorney that she had told the grand jury what the government wanted her to say because the government had threatened to prosecute her and to take her children away if she testified otherwise. Adams also told Thomas' attorney that she planned to invoke her Fifth Amendment privilege against self-incrimination if called to testify at trial.

Thomas filed a motion seeking to bar Adams' testimony and the government's use of any of Adams' pretrial statements, including her grand jury testimony, at trial. The government responded by agreeing not to use Adams' trial testimony against her in any prosecution for the events about which she testified. Based on the government's grant of immunity to Adams, and on her statement that her trial testimony would be truthful, the district court denied Thomas' motion and allowed the government to call Adams as a witness and to introduce her grand jury testimony as substantive evidence pursuant to Fed.R.Evid. 801(d)(1)(A).

At trial, Adams completely contradicted her grand jury testimony. She denied that Thomas was her fiance, and claimed that he only stayed at her home occasionally. She also stated that the gun she had said Thomas brought into her home was actually hers. Finally, she testified that she had found the attaché case, with the sawed-off shotgun inside it, in her basement. She said she removed the case from her basement and put it in her bedroom to prevent her children from finding it. She said she did not know to whom the attaché case belonged and had no idea how Thomas' bank book had made its way into the attaché case. Adams testified that she had lied to the grand jury because government

---

* Hon. Hubert L. Will, Senior District Judge for the Northern District of Illinois, is sitting by designation.

agents and an Assistant United States Attorney had threatened her.

Despite Adams' change of heart at trial, the jury convicted Thomas. Thomas now appeals, raising several issues. The most interesting of these is his contention that the district court should not have allowed the government to call Adams as a witness. According to Thomas, the government violated his right to due process by calling Adams to testify because the government "knew," based on Adams' prior grand jury testimony, that her trial testimony would be false.

Countless cases have held that a prosecutor's knowing use of perjury or failure to correct false testimony may violate a defendant's right to a fair trial if the false testimony could have affected the jury's judgment. See, e.g., *Giglio v. United States*, 405 U.S. 150, 153, 92 S.Ct. 763, 765, 31 L.Ed.2d 104 (1972); *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959); *United States v. Guadagno*, 970 F.2d 214, 219–20 (7th Cir.1992); *United States v. Bontkowski*, 865 F.2d 129, 133–34 (7th Cir.1989). But this line of cases is different from Thomas' case for at least two reasons. First, it is somewhat artificial to say the prosecutor "knew" Adams was going to lie at trial. Certainly, it would be naive to suppose the prosecutor actually believed Adams' new story. But Adams did say that she would testify truthfully at trial, and we see little merit in an argument that would force the prosecutor or trial judge to replace the jury as the arbiter of Adams' credibility. Cf. *United States v. Bourjaily*, 167 F.2d 993, 994–96 (7th Cir.1948) (holding it was reversible error for trial court to strike a witness' trial testimony after the witness retracted his testimony, in part because "[t]he court made itself the sole judge of the credibility of the witness").

Second, as Thomas himself admits, Adams' alleged perjury at trial favored him, not the government. The government's knowing use of perjured testimony at trial violates due process when the perjury could deceive the jury into unjustly convicting a defendant. See *Mooney v. Holohan*, 294 U.S. 103, 112, 55 S.Ct. 340, 342, 79 L.Ed. 791 (1935) (due process is not satisfied despite a trial "if a state has contrived a conviction through the pretense of a trial which in truth is but used as a means of depriving a defendant of liberty through a deliberate deception of court and jury by the presentation of testimony known to be perjured."). If anything, Adams' trial testimony would most likely have had the opposite effect—to lead the jury to acquit Thomas. So, Adams' perjured trial testimony, standing alone, could not have caused any harm to Thomas, and allowing her to testify did not violate Thomas' right to due process.

Thomas' real complaint is not that the government presented false testimony favorable to him, but rather that allowing Adams to testify allowed the government to use her contradictory grand jury testimony pursuant to Fed.R.Evid. 801(d)(1)(A). Rule 801(d)(1)(A) provides that a trial witness' out-of-court statement inconsistent with his trial testimony is not hearsay if "the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement ... was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding...." Since a statement falling within Rule 801(d)(1)(A) is defined as not being hearsay, it is admissible as substantive evidence for the truth of the matter it asserts, and not merely as impeachment. *United States v. DiCaro*, 772 F.2d 1314, 1321 (7th Cir.1985).

Thomas complains about the "unfairness" of using Adams' alleged perjury as a foundation for introducing her grand jury testimony. A trial judge's decision, however, is not reversible simply because that decision makes acquittal less likely. A convicted defendant must demonstrate that the judge's decision violated a substantial right. But which of Thomas' rights has the district court violated here? The answer is, none. Admitting Adams' grand jury testimony did not violate the rules of evidence. Nor did admitting Adams' grand jury testimony violate Thomas' Sixth Amendment right to confront her; she tes-

tified at trial, in Thomas' presence, and was subject to full cross-examination concerning both her trial testimony and her grand jury statement. Cf. *Green v. California,* 399 U.S. 149, 153–64, 90 S.Ct. 1930, 1932–38, 26 L.Ed.2d 489 (1970) (holding that the California evidence rule on which Rule 801(d)(1)(A) was based did not violate the confrontation clause). And allowing Adams to testify and admitting her grand jury statement in no way violated Thomas' right to due process. For the district court to have excluded Adams' testimony would have, for no good reason, deprived the jury of relevant evidence important to its determination of Thomas' guilt or innocence. The district court did not allow the government to attempt to "contrive[ ] a conviction through ... a deliberate deception of court and jury...." *Mooney,* 294 U.S. at 112, 55 S.Ct. at 342. Rather, the court allowed the government, within the framework of the rules of evidence, to lay all of Adams' relevant testimony—both favorable and unfavorable—before the jury. Far from being a violation of due process, this is precisely how the trial process is supposed to work.

■ Thomas raises three other issues. First, he argues that the district court abused its discretion by admitting into evidence a sawed-off shotgun that was allegedly the one found in Adams' house because the government did not sufficiently identify the shotgun as the one found in Adams' home. We disagree. Agent Bodenschatz of the Bureau of Alcohol, Tobacco and Firearms testified that he found a black attaché case behind a chest of drawers in Adams' bedroom. Bodenschatz testified that he found a Korean-made Shinn A Sipja 12–gauge shotgun with the barrel sawed off and the stock cut back. He identified a picture of the shotgun. He then identified Government Exhibit 2 as a Shinn A Sipja 12–gauge shotgun with a sawed-off barrel and cut-back stock. He also gave precise measurements from memory (down to one-eighth inch) of both the barrel's length and the gun's overall length.

Federal Rule of Evidence 901(a) provides that an exhibit is properly identified "by evidence sufficient to support a finding that the matter in question is what its proponent claims." Whether this standard is met is initially for the district court to decide, and we will reverse that court's decision only for an abuse of discretion. *United States v. Moore,* 936 F.2d 1508, 1519 (7th Cir.1991). Thomas' chief contention is that the government never specifically asked Bodenschatz whether Exhibit 2 was the gun he found in Adams' home. But despite the government's failure to ask the obvious foundation question, Bodenschatz's testimony is sufficient to support a finding that the shotgun the government introduced at trial was the same one Bodenschatz found in Adams' home. The similarities Bodenschatz noted between the shotgun described by Bodenschatz and the gun introduced at trial are striking, and the precision of Bodenschatz's measurements indicate that he was familiar with the gun. Moreover, both the judge and jury were able to compare Exhibit 2 to the picture of the shotgun Bodenschatz said he found at Adams' house. In any event, during cross-examination, Thomas' attorney asked Bodenschatz whether the weapons he had identified during his direct examination—which would include the sawed-off shotgun—were found in Adams' home. Bodenschatz replied that they were. Thus, even if Bodenschatz's direct testimony did not sufficiently identify the sawed-off shotgun, his entire testimony sufficiently did so. The district court did not abuse its discretion by admitting the shotgun.

Thomas also contends that the evidence was insufficient to convict him. He concedes, however, that this argument "sinks or swims" with his arguments concerning Adams' testimony and the admission of the sawed-off shotgun. Since those arguments have both sunk, they drag Thomas's sufficiency of the evidence argument down to the murky depths with them.

■ Finally, Thomas contends that the district court erred by instructing the jury that it could find Thomas guilty if it found that he constructively possessed the shot-

gun. According to the instruction, Thomas would have had constructive possession if "although not in actual possession, [he] knowingly ha[d] the power and the intention, at a given time, to exercise dominion or control over [the gun], either directly or through another person or persons...." Although Thomas concedes this instruction properly stated the law, see *United States v. Stockheimer*, 807 F.2d 610, 615 (7th Cir. 1986), he argues that the evidence did not support a finding of constructive possession.

We disagree. Adams testified that the sawed-off shotgun did not belong to Thomas. Yet, the gun was found in an attaché case that the jury could reasonably have believed he had possessed and was under his control because it contained his savings deposit book. The jury could have believed Adams that the shotgun did not belong to Thomas, but still believed he had the power to exercise control over the gun.

For the reasons set forth above, the district court's judgment is

AFFIRMED.