# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

KERMIT W. BUNN,
        *Defendant-Appellant.*

No. 00-4485

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

CHARLES CARLTON STRIBLIN,
        *Defendant-Appellant.*

No. 00-4583

Appeals from the United States District Court
for the Northern District of West Virginia, at Wheeling.
Frederick P. Stamp, Jr., District Judge.
(CR-99-9)

Argued: October 30, 2001

Decided: December 10, 2001

Before WILKINS, LUTTIG, and GREGORY, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Alan Gordon McGonigal, BAILEY, RILEY, BUCH &
HARMAN, L.C., Wheeling, West Virginia, for Appellant Striblin;

James Leonard Baum, LAW OFFICE OF JAMES L. BAUM, Pataskala, Ohio, for Appellant Bunn. Kirby Ann Heller, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Patrick M. Flatley, United States Attorney, Richard Poole, Senior Litigation Counsel, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Kermit Wayne Bunn and Charles Carlton Striblin (collectively, "Appellants") appeal their convictions and sentences on multiple charges stemming from their involvement in various federally funded highway construction projects. Finding no error, we affirm.

### I.

Pursuant to regulations adopted by the Department of Transportation at the direction of Congress, a state that receives federal funds for highway construction projects must set an annual goal for participation in such projects by disadvantaged business enterprises ("DBEs"). Prime contractors, in turn, must ensure that the subcontracts awarded in connection with a highway construction project meet the DBE participation goal for that project. A DBE is a for-profit small business that is at least 51 percent owned by one or more socially and economically disadvantaged individuals, and whose management and daily business operations are controlled by at least one of those individuals. A DBE must be certified by the state in which it operates. In order to satisfy DBE participation goals, a DBE that is awarded a subcontract on a project must perform a commercially useful function—that is, the DBE itself must perform, manage and supervise the subcontract work and must order and pay for the materials used. A contractor

will not receive credit for DBE participation if the relationship between the contractor and the DBE "erodes the ownership, control, or independence of the DBE." J.A. 158.

Bunn was the president of Bunn Construction, which did subcontract work on highway construction projects. Bunn Construction was not a DBE. Stated briefly, the evidence presented at trial demonstrated that between 1991 and 1996, Bunn recruited DBEs to serve as "fronts" on bids for five highway construction projects sponsored by the West Virginia Department of Highways (WVDOH) and partially funded by the federal government. Although the DBE was the subcontractor of record, the work was actually performed by Bunn Construction. Striblin, who owned a DBE, allowed Bunn to use his company as a front on several of the projects.

Based on the fraudulent scheme, Appellants were convicted of conspiracy to commit mail and wire fraud, *see* 18 U.S.C.A. § 371 (West 2000), and two counts of wire fraud, *see* 18 U.S.C.A. § 1343 (West 2000). Additionally, based on acts committed in connection with the grand jury investigation of Appellants' activities and the trial of a coconspirator, Bunn was convicted of three counts of obstruction of justice, *see* 18 U.S.C.A. § 1503 (West 2000), and three counts of perjury, *see* 18 U.S.C.A. § 1623 (West 2000). Striblin was convicted of two counts of obstruction of justice and one count of perjury.

II.

A.

Appellants jointly argue that the evidence was insufficient to support their convictions for wire fraud.[1] In reviewing the sufficiency of the evidence, our role is limited to determining whether "there is substantial evidence, taking the view most favorable to the Government, to support" the verdict. *Glasser v. United States*, 315 U.S. 60, 80 (1942). Reversal for insufficient evidence is reserved for cases in which "the prosecution's failure is clear." *Burks v. United States*, 437 U.S. 1, 17 (1978).

---

[1]Although Appellants do not explicitly say so, we presume this argument also applies to their conspiracy convictions.

As is relevant here, the wire fraud statute prohibits the transmission of wire communications for the purpose of executing a scheme to defraud or to obtain money or property by false pretenses. *See* 18 U.S.C.A. § 1343. Thus, the Government was required to prove "(1) the existence of a scheme to defraud, (2) use of wire communications in furtherance of the scheme, and (3) that the scheme was intended to deprive a victim of money [or] property." *United States v. Merklinger*, 16 F.3d 670, 678 (6th Cir. 1994). Appellants dispute the sufficiency of the Government's proof on the third element, maintaining that the Government failed to prove that they deprived any identifiable victim of any property right.

Appellants' argument proceeds along the following lines. First, Appellants note that the wire fraud statute is "limited to 'protecting property rights.'" *United States v. Adler*, 186 F.3d 574, 576 (4th Cir. 1999) (quoting *McNally v. United States*, 483 U.S. 350, 357 (1987)). From this premise, they conclude that in order to sustain a conviction, the evidence must establish that they caused a loss to an identifiable victim. Appellants assert that because the WVDOH obtained the benefit of its bargain—*i.e.*, the subcontract work was performed satisfactorily—the WVDOH suffered no loss other than a deprivation of the "aspirational goal" of attaining a certain level of DBE participation. Br. of Appellants at 16. Appellants further contend that because this goal is not a property right, the Government failed to establish the necessary elements of wire fraud.

In making this argument, Appellants refuse to acknowledge that the property interest at stake is not the goal of DBE participation, but rather the actual dollars used for the highway construction. Moreover, Appellants cannot assert that their convictions are improper on the basis that the subcontract work was actually performed to the satisfaction of the WVDOH, and thus that the WVDOH suffered no financial loss. Financial loss is not an essential element of wire fraud. *See Adler*, 186 F.3d at 576. The gravamen of the offense is not, as Appellants contend, financial loss to the victim; it is, rather, the "intent to obtain money or property from the victim of the deceit." *United States v. Utz*, 886 F.2d 1148, 1151 (9th Cir. 1989) (per curiam) (internal quotation marks omitted); *see United States v. Dinome*, 86 F.3d 277, 283-85 (2d Cir. 1996) (upholding wire fraud convictions based on supplying false information in connection with mortgage loan; even

though lender suffered no loss, loan would not have been made if accurate information had been supplied). The Government's evidence established that Appellants obtained money to which they were otherwise not entitled by falsely representing that subcontract work would be performed by DBEs. Nothing more is required.

B.

Next, Appellants argue that even if they were properly convicted of wire fraud, the district court erred in determining the amount of loss attributable to them for sentencing purposes. Appellants were sentenced pursuant to *United States Sentencing Guidelines Manual* § 2F1.1 (1998). Section 2F1.1 establishes a base offense level of six and provides for an enhancement of up to 18 levels depending upon the amount of loss caused by the defendant's fraudulent conduct. *See* U.S.S.G. § 2F1.1(a), (b)(1). In applying the loss table to Appellants, the district court determined that the amount of loss was the amount the WVDOH had intended to pay to a legitimate DBE for each of the highway construction projects. *See id.* § 2F1.1, comment. (n.8(d)) ("In a case involving diversion of government program benefits, loss is the value of the benefits diverted from intended recipients or uses."). Appellants argue that because the WVDOH received the benefit of its bargain, it suffered no loss, and hence the enhancement was inappropriate.

This court rejected an almost identical argument in a companion case to this one, *United States v. Brothers Construction Co. of Ohio*, 219 F.3d 300 (4th Cir.), *cert. denied*, 531 U.S. 1037 (2000). The appellants in *Brothers Construction* argued that no loss was attributable to their fraudulent conduct because (1) the DBE credit was ultimately satisfied, and (2) the work was actually performed to the satisfaction of the WVDOH. *See id.* at 317-18. We disagreed, concluding that "there was certainly loss as contemplated by the guidelines" because the funds "earmarked for DBE project participation by Brothers . . . were not put to the intended use." *Id.* at 318. *Brothers Construction* is controlling. Here, as in that case, funds earmarked by the WVDOH for DBE participation were diverted from their intended

use. Accordingly, the amount of those funds was the appropriate measure of the loss.[2]

## III.

For his own part, Bunn challenges the sufficiency of the evidence supporting his obstruction of justice and perjury convictions. He also contends that the Government knowingly presented perjured testimony at trial. We conclude that none of these challenges has merit.

## A.

Two of Bunn's obstruction of justice convictions rested on his testimony to the grand jury that was investigating the activities of Bunn Construction. In order to convict Bunn, the Government was required to produce evidence sufficient to convince the jury that (1) there was a pending grand jury proceeding; (2) Bunn was aware of the proceeding; and (3) Bunn "acted corruptly, that is with the intent to influence, obstruct, or impede that proceeding in its due administration of justice." *United States v. Grubb*, 11 F.3d 426, 437 (4th Cir. 1993); *see also United States v. Russo*, 104 F.3d 431, 435-36 (D.C. Cir. 1997) (holding that defendant may be convicted of obstruction of justice upon proof that defendant lied to grand jury with intent to impede its investigation).

Bunn argues that the Government did not present sufficient evidence that he intended to impede the investigation of the grand jury. He maintains that he testified honestly to the facts as he recalled them and that his admitted lapses of memory did not demonstrate any intent to impede the administration of justice. Upon reviewing the record, we conclude that the evidence was sufficient for a rational trier of fact to conclude that Bunn testified falsely and that he did so with the intent to impede the investigation by the grand jury.

---

[2]Appellants further argue that, assuming a loss existed, the loss should have been measured by their profit on the subcontracts rather than by the amount intended by the WVDOH for DBE participation. The commentary to § 2F1.1 makes plain that this contention is without merit. *See* U.S.S.G. § 2F1.1, comment. (n.8(d)).

Bunn's third obstruction of justice conviction was based on his actions toward Special Agent Richard Regan of the Department of Transportation. During the course of the investigation, Agent Regan arrived at Bunn's home with local law enforcement officers to serve a subpoena on Bunn's son. Bunn met the agents outside, cursed at them, and stated that they "would be underground." J.A. 1786. When asked if he was making a threat, Bunn replied, "No, that is a promise." *Id.* at 1787. Bunn's only challenge to this conviction is that Agent Regan was not acting in the course of his duties at the time, and thus that Bunn could not have obstructed Agent Regan's performance of those duties. We conclude that the evidence was sufficient for a rational trier of fact to conclude that Agent Regan was acting in the course of his duties; accordingly, we affirm this conviction.

### B.

Bunn was also convicted of three counts of perjury. *See* 18 U.S.C.A. § 1623. Bunn challenges two of these convictions, maintaining that the Government failed to prove that the testimony in question was false. *See United States v. Sarihifard*, 155 F.3d 301, 306 (4th Cir. 1998) (setting forth elements of § 1623 offense). The first of the challenged convictions was based on Bunn's testimony in a related trial regarding equipment purportedly leased to a DBE; the second rested on Bunn's testimony before the grand jury regarding his ownership interest in Striblin's company. We conclude that the evidence in the record was sufficient for a rational jury to conclude that both items of testimony were false. We therefore affirm the perjury convictions.

### C.

Finally, Bunn contends that the Government violated his due process rights by presenting perjured testimony during trial. We disagree.[3]

A conviction acquired through the knowing use of perjured testimony by the prosecution violates due process. *See Napue v. Illinois*, 360 U.S. 264, 269 (1959). This is true regardless of whether the prosecution solicited testimony it knew to be false or simply allowed such

---

[3]Because Bunn's claim is without merit, we do not address the Government's contention that the claim should be reviewed for plain error.

testimony to pass uncorrected. *See id.* The knowing use of perjured testimony constitutes a due process violation when "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Kyles v. Whitley*, 514 U.S. 419, 433 n.7 (1995) (internal quotation marks omitted).

Bunn first argues that Agent Regan perjured himself during his testimony on direct examination. In support of this contention, Bunn points to inconsistencies between Regan's testimony on direct and cross-examination. Mere inconsistencies, however, do not constitute a due process violation. *See United States v. Griley*, 814 F.2d 967, 971 (4th Cir. 1987). Moreover, given that the inconsistencies in Agent Regan's testimony were exposed during Bunn's vigorous cross-examination, there is no reasonable likelihood that the verdict was affected.

Bunn also argues that the Government violated his due process rights by presenting the testimony of Brenda Kay Ware, who testified regarding the involvement of her company, a DBE, in one of the highway construction projects. The Government agrees with Bunn that certain portions of Ware's testimony were false. However, Ware's testimony actually favored Bunn; indeed, during closing argument the Government argued that the relevant portion of Ware's testimony was false, and Bunn argued that it was true. There is no due process violation when allegedly false testimony favors the defendant. *See United States v. Thomas*, 987 F.2d 1298, 1300 (7th Cir. 1993).

IV.

For the reasons set forth above, we conclude that all of Appellants' challenges to their convictions and sentences are without merit. Accordingly, we affirm.

*AFFIRMED*