**UNITED STATES of America**

v.

**Michael ARTIS.**

No. 95cr132.

United States District Court,
E.D. Pennsylvania.

Jan. 31, 1996.

Pamela Foa, Asst. U.S. Atty., Philadelphia, PA, for plaintiff.

David McGlaughlin, Philadelphia, PA, for defendant.

### MEMORANDUM AND ORDER

DITTER, District Judge.

*Introduction*

The grand jury indicted Michael Artis and Theodore Wileczek for a variety of crimes related to mail theft. *See* 18 U.S.C. §§ 1708–09. During their trial, Wileczek pled guilty and the jury convicted Artis. Artis now moves for a new trial. For the reasons discussed below, I will refuse his motion.

The jury's verdict establishes its acceptance of evidence that would have led it to find these basic facts:

Artis worked at one of the post office's bulk mail centers. Mail from such a center is delivered to a neighborhood post office and from there to the various homes and businesses in that area. (N.T. 6/13/95, at 2–3). On a number of occasions, Artis removed packages of Columbia House compact discs from the mail and packed them into a large, brown, cardboard box typical of those used to deliver materials to the mail center (N.T. 6/13/95, at 19; 6/14/95, at 90) and readily available to those who worked there. (N.T. 6/14/95, at 33–34). He would then address the large box to Wileczek or to Wileczek's wife, Theresa. Because of the number, size, and weight of the boxes, Wileczek's mail carrier remembered delivering many of them over a period of several months. (N.T. 6/14/95, at 33–35, 55–56, 143).

The postal inspectors uncovered the thefts after one of the large boxes broke open at the post office. (N.T. 6/14/95, at 25–28). The inspectors resealed it and staged a controlled delivery of the box to the Wileczek home. Later, they took a statement from Mrs. Wileczek. Although not indicted, at trial, Mrs. Wileczek asserted both her Fifth Amendment privilege against self-incrimination and her marital privilege. I ruled, therefore, that she was unavailable to testify. Fed.R.Evid. 804(a)(1). Artis, Wileczek, and the government stipulated to the admission of a redacted version of Mrs. Wileczek's statement. (5/10/95, Document 37). The redacted version contained no reference by name to either Artis or Wileczek.

Artis maintains in his motion for a new trial that, notwithstanding the redaction of his name (and Wileczek's) from Mrs. Wileczek's statement, his rights—secured by the Sixth Amendment's Confrontation Clause as articulated by the Supreme Court in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968)—were violated when: (i) two government witnesses made indirect references to him during testimony about the statement; and (ii) the statement was allowed to go to the jury after Mr. Wileczek had already pled guilty.

*Discussion*

1. Mrs. Wileczek's Statement Not *Bruton* Statement

Artis' reliance on *Bruton v. United States* is misplaced. In *Bruton,* the Supreme Court addressed a situation where, at a joint crimi-

nal trial, a nontestifying defendant's confession (which implicated his codefendant) was introduced into evidence against the confessor. The confession was admissible against the confessor as an admission. Fed.R.Evid. 802; *Bruton*, 391 U.S. at 125, 88 S.Ct. at 1622; *see also United States v. De Peri*, 778 F.2d 963, 982 (3d Cir.1985), *cert. denied*, 475 U.S. 1110, 106 S.Ct. 1518, 89 L.Ed.2d 916 (1986). The statement was, however, inadmissible hearsay as against the nonconfessing defendant. The Supreme Court held that although the trial court cautioned the jury to consider the confession only against the confessor, the cautionary instruction was insufficient to protect the nonconfessing defendant's Confrontation Clause rights; the risk was too great that the jury would impermissibly consider the confession against the nonconfessing defendant.

*Bruton* applies to a *confession* made by a nontestifying *codefendant*. *See Bruton*, 391 U.S. at 124, 88 S.Ct. at 1621–22. The idea behind the holding is that, at a joint trial, the court needs to limit realistically the jury's consideration of evidence that is only admissible against one defendant. The Supreme Court has consistently urged that *Bruton* be construed narrowly. *Richardson v. Marsh*, 481 U.S. 200, 207, 107 S.Ct. 1702, 1707, 95 L.Ed.2d 176 (1987).

■ Mrs. Wileczek was not a codefendant and, although her statement was incriminating, it did not amount to a confession of any crime. Her statement was not admissible as an admission by either defendant. Thus, *Bruton* does not apply to Mrs. Wileczek's statement.

**2. Statement Admissible**

■ Although an out-of-court inculpatory statement may not be covered by *Bruton*, the hearsay rule and Confrontation Clause impose limits on the admissibility of such evidence. In the instant case, however, Artis, Wileczek, defense counsel, and the government stipulated to the admission of a redacted version of Mrs. Wileczek's statement. (5/10/95 Document 37). Artis argues that, notwithstanding the stipulation's language, (which agrees to the admission of the redacted statement without limitation),[1] he only stipulated to admitting the statement against Wileczek. (N.T. 6/15/95, at 3–5). He concludes that once Wileczek pled guilty, the statement was no longer relevant and should not have gone out with the jury.[2]

■ Artis, however, misapprehends the law. His argument is based on the faulty presumption that the instant case is analogous to *Bruton* and, Mrs. Wileczek's statement was only admissible against his codefendant. However, as discussed above, unlike the statement at issue in *Bruton*, Mrs. Wileczek's statement was not made by a nontestifying codefendant and was not admissible against Artis' codefendant as an admission. Rather, Mrs. Wileczek's redacted statement was the product of a joint stipulation that contained no limiting language. Moreover, when the redacted statement was read to the jury and moved into evidence, Artis raised no objection nor did he request a limiting instruction. (N.T. 6/15/95, at 126).

1. The stipulation provides that:
 In response to the United State's Motion in Limine, this 10th day of May, 1995, it is hereby agreed and stipulated among counsel for defendants, counsel for Theresa Wileczek, defendants and Theresa Wileczek that [a redacted version of Mrs. Wileczek's statement] will be admitted without objection by any of the undersigned at the trial of the defendants and may be read to the jury by Postal Inspector William F. Scott or Detective G. Brennan.

2. As discussed below, the statement was properly admitted into evidence. In addition, it was correct to have the statement go out with the jury. The trial court is vested with discretion about whether exhibits may go out with the jury. *United States v. Riebold*, 557 F.2d 697, 706 (10th Cir.), *cert. denied*, 434 U.S. 860, 98 S.Ct. 186, 54 L.Ed.2d 133 (1977); *Shane v. Warner Mfg. Corp.*, 229 F.2d 207 (3d Cir.), *cert. dismissed*, 351 U.S. 959, 76 S.Ct. 860, 100 L.Ed. 1481 (1956). Here, I had already instructed the jury not to consider Mr. Wileczek's confession after he pled guilty midway through the trial. However, I concluded that if Mrs. Wileczek's statement, which was in evidence, and Mr. Wileczek's confession, which was not in evidence, did not go out with the jury, the jury might be confused and consider excluded evidence (Mr. Wileczek's statement). Thus, I decided that Mrs. Wileczek's statement should go out with the jury because it would deflect any unwanted attention from Mr. Wileczek's confession. (N.T. 6/19/95, at 104–05).

By not objecting to the statement's admission, not putting any limiting language in the stipulation, and not requesting a limiting instruction when the statement was admitted into evidence, Artis waived any objection to the jury considering the statement against him. *Hassel v. Holt,* 371 F.2d 543, 544 (3d Cir.1967), Fed. R.Evid. 103(a)(1) (party must raise timely objection to admission of arguably objectionable evidence), 105 (party must request limiting instruction). Therefore, the jury properly considered the statement as part of its deliberations over Artis' guilt.[3]

Moreover, even assuming that the jury should not have considered the statement after Wileczek pled guilty, I find that any potential error was harmless. Mrs. Wileczek's statement provided in relevant part that:

> Approximately 6–7 months ago a man began sending boxes of CD's to my house at 2000 Simpson Street Philadelphia Pa 19142. This man is employed by the U.S. Postal Service. He was sending the CD's from the place where he works, the Post Office. He was taking them from the U.S. mail. I saw mailing labels on the CD's, addressed to other people.
>
> This postal employee would send about 2–3 boxes a month to me and another person. Once we received them, that person would remove them from the boxes they were in. He would count them and take them to a place where they sell CD's. The store where he takes them paid us $3.00 per CD. That same person split the profit with the postal employee.
>
> I only remember receiving CD's from the postal employee. The box that is addressed to me should have CD's in it. When the employee sent the boxes, he addressed one box to me and one to other

person. I never remember receiving anything but CD's from the postal employee. The person who sold the CD's normally received $420–$800 every two weeks. It depended on how many CD's were packed in a box. That person would take the CD's to "CD John." I think it is in Norwood. I don't know exactly where it is located but I believe it is in Norwood.

> The person and I used the money for personal use, Bills, we went to the casino on 5 occasions.

 Error is harmless and a new trial is not warranted where it is highly probable that the error did not contribute to the jury's judgment of conviction. *United States v. Thornton,* 1 F.3d 149, 156–57 (3d Cir.1993). The only inculpatory aspect of Mrs. Wileczek's redacted statement, at least as far as Artis is concerned, is the way it links a postal employee to the stolen compact discs. As Artis was a postal employee, the statement served as circumstantial evidence connecting him to the crime. However, the government presented more probative evidence than Mrs. Wileczek's statement on this point.

Several postal inspectors and letter carriers testified that the compact discs were stolen by a bulk mail employee, an inside man. (N.T. 6/14/95, at 89–90). This evidence included testimony about the fact that Artis' position at the bulk mail center gave him both the opportunity to steal the discs (N.T. 6/13/95, at 16–18) and access to the packing materials that were used to ship them.[4] (N.T. 6/13/95, at 16–20). This additional evidence was more probative, more inculpatory, and simply more meaningful than any inference that could be drawn from Mrs. Wileczek's statement circumstantially linking Artis, as a postal employee, to the crime. Thus, it is highly unlikely that Mrs. Wileczek's statement contributed to the jury's decision to convict Artis.[5]

---

**3.** Artis' first attempt to limit the statement's admissibility to his codefendant and to preclude the jury's consideration of the statement against him came in the middle of trial, after he had already stipulated to the statement's global admission. (N.T. 6/15/95, at 3–4).

**4.** It could even be argued that since Artis worked in the bulk mail center and Mrs. Wileczek said

that the thief worked at "the Post Office," the statement was *exculpatory,* not *inculpatory.*

**5.** It is also important to note that Mrs. Wileczek's *unredacted* statement might well have been admissible as a statement against penal interest, Fed.R.Evid. 804(b)(3), or as falling within the residual exception. Fed.R.Evid. 804(b)(5). Thus, Artis may have made an extremely wise strategic decision by stipulating to the admission

### 3. Any Testimonial Error Was Harmless

As just discussed, the redacted statement was correctly admitted into evidence pursuant to stipulation. However, any reference to the statement that specifically identified Artis—a reference that went beyond the stipulation—was objectionable hearsay. In this case, Artis argues that a new trial is required because of two references allegedly identifying him as the man in Mrs. Wileczek's statement. I find that because there was likely no error related to one reference, and, any error from the second reference was harmless, a new trial is unwarranted.

The first incident occurred on the second day of trial, when the following exchange took place between Postal Inspector Lalli and the government's attorney:

Q. After you spoke with Mrs. Wileczek, where did you go?

A. I went to the Bulk Mail Center.

Q. Which Bulk Mail Center?

A. Philadelphia Bulk Mail Center on Byberry Road.

Q. What did you plan to do at that time?

A. I planned to interview a postal employee.

Q. Which postal employee?

A. The one that was brought—named to me.

(N.T. 6/14/95, at 101).

At this point, Artis' attorney moved for a mistrial. I refused the motion and instructed the jury to disregard the inspector's answer.

■ Hearsay is an out-of-court statement offered for the truth of the matter asserted. Fed.R.Evid. 801. The postal inspector did not purport to relate what Mrs. Wileczek had said. He did not testify that Mrs. Wileczek had identified a person at the post office. He did not testify that Mrs. Wileczek had named Artis as part of the conspiracy. Indeed, all the inspector said was that he "planned" to talk "to a person named to me." His testimony did not contain hearsay because it did not repeat any out-of-court declaration and, therefore, there was no error.[6]

■ However, even assuming that the inspector's statement was impermissible hearsay, I find that a new trial is not warranted. It has long been the rule that a trial judge's remedial instruction to the jury cures most errors. *Throckmorton v. Holt*, 180 U.S. 552, 567, 21 S.Ct. 474, 480, 45 L.Ed. 663 (1901). The Third Circuit has recently echoed this principle holding that where an incorrect admission of evidence is subsequently stricken from the record and the jury is given a curative instruction, a new trial is only required if there is an overwhelming probability that the jury will be unable to follow the instruction and the evidence would be "devastating" to the defendant. *United States v. Newby*, 11 F.3d 1143, 1147 (3d Cir.1993). In this case, I find that there is nothing to suggest that the jury failed to follow my curative instruction. Even if for some inconceivable reason they chose to disregard the instruction, the inspector's vague testimony was not "devastating" to Artis because the government's case was built on admissible evidence that unequivocally established Mr. Artis' guilt.

The second arguably objectionable testimony came when another postal inspector, Charles Sielski, answering the government's question about whether Mrs. Wileczek knew where the packages of discs had come from, testified, "She said they were coming from the Bulk Mail Center from Mike." (N.T. 6/15/95, at 13). At this point, Artis' attorney moved for a mistrial. Once again, I refused the motion. After my refusal, Artis did not request a curative instruction despite the fact that at sidebar, the government indicated that it would not object to such an instruction.[7]

---

of a redacted statement, one that did not contain any direct reference to him.

**6.** In effect, the question was a variation of the familiar and appropriate, "As a result of what you were told, what did you do?" The answer did not contain hearsay because it did not reveal what information was received and it was not offered for the truth of the matter asserted. Frequently action is taken not because a statement to the actor is considered to be truthful, but for just the opposite reason.

**7.** No doubt, Artis' attorney did not want a curative instruction as a matter of strategy—i.e., he

■ As with the first statement challenged by Artis, any error associated with this second statement could have been cured with an instruction. However, Artis never requested an instruction. Thus, it appears that he waived the objection that he raises now. However, even assuming that it was error to admit the inspector's second statement and for me not to give a curative instruction *mea sponte,* I find that Artis was not prejudiced.

As noted above, an erroneous evidentiary ruling is harmless and does not require a new trial where it is highly probable that the error did not contribute to the jury's judgment of conviction. *Thornton,* 1 F.3d at 156–57; *United States v. Leo,* 941 F.2d 181, 194 (3d Cir.1991). Here, Artis' conviction was supported by overwhelming evidence. In addition to the evidence that the packages came from the bulk mail center (where Artis both worked and had access to large cardboard cartons of the type delivered to Wileczek) there was devastating fingerprint evidence. A government expert testified that Artis' fingerprint was *under* a postage strip on one of the boxes containing the stolen compact discs. (N.T. 6/16/95, at 23–24; 6/19/95, at 23–24). The strip in question had been issued by a post office in Dover, Delaware, (N.T. 6/14/95, at 84) on January 13, 1995. (N.T. 6/14/95, at 88). The stolen compact discs, still in their individually addressed cartons, had been placed in the mail by Columbia House in Philadelphia, Pennsylvania. (N.T. 6/14/95, at 120).[8] The amount on the meter strip bore no relation to the weight of the large box (N.T. 6/14/95, at 38) and had obviously been removed from some other package to make the large cardboard container addressed to Wileczek appear to the casual observer to be a routine mailing. (N.T. 6/14/95, at 97–98). This evidence was particularly damning because although a postal employee at the bulk mail center may have handled any given box that went through the center and thus have left a fingerprint on it in the ordinary course of his job, there is no plausible explanation for the employee's fin-

gerprint to be on the underside of an adhesive postage strip affixed to a box unless he was the one who had put it there. (N.T. 6/13/95, at 23).

In addition, the government presented other convincing evidence linking Artis to the boxes of stolen compact discs. A handwriting expert testified that Artis' handwriting matched the handwriting of the person who addressed at least three boxes containing stolen discs. (N.T. 6/16/95, at 59). Also, Artis was present at the Wileczek home within hours of the controlled delivery (N.T. 6/15/95, at 129), and a postal worker testified that he had delivered multiple large, heavy, similarly addressed boxes to the Wileczek home. (N.T. 6/14/95, at 33–35, 55–56, 143).

The substantial, inculpatory evidence against Artis was so great that it simply eclipsed any improper inference that the jury may have drawn from the postal inspector's isolated and vague reference to "Mike." Moreover, the reference appears to be merely cumulative of other more weighty evidence presented at trial that supported the conviction. *See United States v. Casoni,* 950 F.2d 893, 917 (3d Cir.1991). Therefore, any error associated with the postal inspector's testimony was harmless because it did not contribute to the jury's decision to convict.

An appropriate order follows.

### ORDER

AND NOW, this 31st day of January, 1996, defendant's motion for a new trial is hereby denied. Defendant is ordered to appear for sentencing on February 15, 1996, at 9:30 a.m. in Court Room 6A.

---

did not want to highlight testimony that he believed to be objectionable.

**8.** Although Columbia House ships out of Pittman, New Jersey, (N.T. 6/13/95, at 7), its merchandise moves through Philadelphia's bulk mail center.