**UNITED STATES of America**

v.

**Joseph COBB Jr.**

**No. Crim.A. 91–570–13.**

United States District Court,
E.D. Pennsylvania.

Jan. 22, 1999.

Robert Courtney, U.S. Attorney's Office, Philadelphia, PA, for plaintiff.

Timothy P. Booker, Philadelphia, PA, for defendant.

### *MEMORANDUM*

KATZ, Senior District Judge.

The defendant, Mr. Cobb, has requested a copy of the financial disclosure statement of the sentencing judge. A recent Amendment to the law requiring public access to judicial disclosure reports recognizes that security interests may justify withholding immediate and unconditional availability of the reports, so that redaction may be done to protect filers. Public Law 105–318, 105th Congress, 2d Session. The law also makes it unlawful to obtain or use the reports for any unlawful purpose. Section 105(c)(1)(A) of Public Law 95–521.

On July 10, 1992, following several weeks of trial before this court, a jury found Mr. Cobb guilty of Count One in Indictment Number 91–00580–13, namely, conspiracy to distribute and possess with intent to distribute quantities of cocaine and heroin in violation of 21 U.S.C. §§ 846 and 841.[1] The evidence at trial proved that Mr. Cobb was a long-term member of the JBM, or Junior Black Mafia, a large, closely knit, and violent drug trafficking organization. This organization distributed in excess of 1,000 kilograms of cocaine, crack cocaine, and heroin in the Philadelphia area during the conspiracy peri-

---

1. This conviction was affirmed on appeal at No. 93–1094, reported at 13 F.3d 711 (3d Cir.). *cert.* *denied*, 513 U.S. 853, 115 S.Ct. 155, 130 L.Ed.2d 93 (1994).

od,[2] and employed violence and the threat of violence both to expand the territory it controlled and to maintain discipline within the organization.

Notably, the evidence at trial showed that the JBM organization controlled a high-volume trade in the sale and distribution of narcotics in numerous low-income neighborhoods of Philadelphia. JBM drug sales in these impoverished neighborhoods yielded tens of thousands of dollars per week. In pursuit of its goal to expand the territory in which it controlled narcotics sales and distribution, as well as to maintain internal discipline, members of the JBM organization committed at least three murders and eight attempted murders.

Specifically, the evidence at trial showed that Mr. Cobb became a member of the JBM near its inception in approximately 1986. His primary role in the JBM organizations was that of enforcer, although he distributed JBM cocaine and heroin on occasion. Mr. Cobb entered the JBM conspiracy in 1986 as an enforcer for a JBM squad headed by Bucky Davis; following an arrest in Virginia for cocaine possession, he escaped and returned to Philadelphia to work as an enforcer for the squad of JBM enforcers headed by Sam Brown. In his capacity as enforcer, Mr. Cobb routinely carried a firearm and used violence and the threat of violence to advance the drug distribution activities of the JBM. Notably, Mr. Cobb's participation in the attempted murder of Terrence Goss in February 1989 and the July 1989 slaying of an innocent bystander at 24th and Moore during a botched attempt to assassinate a rival drug dealer illustrate the extent of his involvement in the violence perpetrated by the JBM. His proclivity toward violence is further demonstrated by his two previous arrests for firearms violations and his prior juvenile arrest arising from a shooting incident.

In addition to his role as a JBM enforcer, Mr. Cobb was involved in the sale and distribution of JBM cocaine and heroin. More-over, Mr. Cobb was previously convicted for possession of a controlled substance.

At defendant's sentencing on October 26, 1992, the court adopted the factual findings and guideline application in the Presentence Report ("PSR"). Mr. Cobb was assigned a base offense level of 40 pursuant to the U.S.S.G. § 2D1.1(c) Drug Quantity Table then applicable for a quantity in excess of 500 kilograms of cocaine. Mr. Cobb also received a 2–level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) for possession of a firearm during the commission of the offense. Thus, at sentencing, Mr. Cobb's total offense level was 42. The court, applying a Criminal History Category of I, sentenced Mr. Cobb to 360 months imprisonment.

While the sentencing judge has no personal position with regard to the release of his financial disclosure statement to Mr. Cobb, it is prudent to advise the United States Marshal Service and the Committee on Financial Disclosure of the Judicial Conference of the United States of the facts set forth in this Memorandum for whatever action, if any, is appropriate.[3]

---

2. *See United States v. Thornton,* 1 F.3d 149, 152 (3d Cir.1993) (Third Circuit affirms the more than 1,000 kg. drug quantity and the violent nature of JBM), *cert. denied,* 510 U.S. 982, 114 S.Ct. 483, 126 L.Ed.2d 433 (1993).

3. By letter dated January 14, 1999, The Committee advised the sentencing judge of Mr. Cobb's request in accordance with its usual practice. The sentencing judge is also a member of that Committee.