NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 10-1524

_____

UNITED STATES OF AMERICA

v.

RAKIM BASKERVILLE,
a/k/a Roc

Rakim Baskerville, Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-04-cr-00280-011)
District Judge: Honorable Faith S. Hochberg

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 25, 2012

Before: FISHER and GREENBERG, *Circuit Judges*, and OLIVER,* *District Judge*.

(Filed: August 13, 2012)

_____

OPINION OF THE COURT

_____

_____

* The Honorable Solomon Oliver, Jr., Chief Judge of the United States District
Court for the Northern District of Ohio, sitting by designation.

FISHER, *Circuit Judge*.

Rakeem Baskerville ("Baskerville") was convicted in the United States District Court for the District of New Jersey of conspiring to distribute, and to possess with intent to distribute, five kilograms or more of cocaine and one kilogram or more of heroin, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(a), and 21 U.S.C. § 846. On appeal, Baskerville challenges the District Court's denial of his motion for a new trial pursuant to Federal Rule of Criminal Procedure 33(a), and in his brief, raises an additional argument challenging the District Court's denial of his motion under Federal Rule of Civil Procedure 60(b)(2). For the reasons stated below, we will affirm.

I.

We write principally for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

From January 2000 until March 2004, the Curry Organization distributed cocaine and heroin in and around Newark, New Jersey. Defendant Rakeem Baskerville served as a street-level manager in the Curry Organization, which distributed between 350 and 2000 kilograms of cocaine, and between 300 and 500 kilograms of heroin between January 2000 and March 2004. The conspiracy was responsible for at least two murders.

A DEA task force began investigating the Curry Organization in November 2002, intercepting numerous calls. An expert witness concluded that the calls routinely discussed large quantities of cocaine and dollar amounts as large as $75,000. At trial,

cooperating witness Lachoy Walker testified that Baskerville routinely received distribution quantities of heroin and cocaine from Hakeem Curry (the head of the organization), and that he (Walker) personally delivered cocaine and heroin to Baskerville on several occasions. Walker also witnessed Baskerville deliver a bag full of cash to Curry. In addition, Walker witnessed Curry divide 200 bricks of heroin equally between himself and Baskerville.

On March 8, 2004, DEA agents discovered multiple bricks of heroin in a van registered to Baskervillle. The heroin was concealed inside customized mechanical "traps" within the vehicle. The heroin was identical in both purity and packaging to heroin seized from Walker on March 4, 2004.

Baskerville also paid over $6,000 in cash for a custom gold and diamond medallion which displayed his nickname. His tax returns from 1999 through 2003 never showed an adjusted gross income of over $21,000 (no tax return was filed in 2000).

On February 3, 2006, a grand jury charged Baskerville, Curry, and eight other defendants with conspiring to distribute, and to possess with intent to distribute, five kilograms or more of cocaine and one kilogram or more of heroin, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(a), and 21 U.S.C. § 846. The Government called on numerous witnesses at trial, including George Snowden, who was then a Sergeant with the Newark Police Department ("NPD"). On July 24, 2006, the jury found Baskerville guilty after a ten-week trial. On January 31, 2007, the District Court sentenced

Baskerville to life imprisonment, and Baskerville timely appealed. This Court affirmed the conviction on July 30, 2009. *United States v. Baskerville*, 339 F. App'x 176 (3d Cir. 2009).

A post-trial background check by the Monmouth County Prosecutor's Office in an unrelated investigation revealed the existence of a final domestic violence restraining order ("DVRO") that had been issued against George Snowden, who had been a Sergeant with the Newark Police Department ("NPD") and one of the Government's witnesses at Baskerville's trial. The DVRO had been issued in connection with an argument Snowden had with a former girlfriend in 1996. The Government had failed to disclose this material prior to trial.

As a result of this newly disclosed evidence, on July 1, 2009, Baskerville filed a motion for a new trial pursuant to Federal Rule of Criminal Procedure 33(a), arguing that Snowden or the prosecution may have concealed the DVRO, and that if he had been able to cross-examine Snowden about the DVRO, he could have impeached Snowden and changed the outcome of the trial. On February 3, 2010, the District Court denied this motion, finding that there was no *Brady* or *Giglio* violation and that the Government had not suppressed the DVRO. On February 17, 2010, Baskerville timely appealed the denial of the Rule 33(a) motion. While this appeal was pending, Baskerville's initial request for Snowden's personnel file was denied, after which Baskerville filed a motion pursuant to Federal Rule of Civil Procedure 60(b) to obtain the personnel file for use in his Rule

33(a) appeal. On September 16, 2010, the District Court denied the Rule 60(b) motion, finding that the pending appeal of the Rule 33(a) motion divested the Court of jurisdiction. Baskerville did not appeal the denial of the Rule 60(b) motion.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction to review the District Court's denial of the Rule 33(a) motion pursuant to 28 U.S.C. § 1291, but decline to review the District Court's denial of the Rule 60(b) motion.[1] We review the District Court's decision to deny the Rule 33(a) motion for abuse of discretion. *United States v. Saada*, 212 F.3d 210, 215 (3d Cir. 2000).

## III.

Baskerville argues that the District Court should have granted him a new trial pursuant to Federal Rule of Criminal Procedure 33 based on newly discovered evidence, which he claims that the government failed to disclose in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963). We disagree. Federal Rule of Criminal Procedure 33

---

[1] We decline to review the denial of the Rule 60(b) motion because Baskerville did not file a notice of appeal from that order. Fed. R. App. P. 3(a)(1); *see Virgin Islands v. Martinez*, 620 F.3d 321, 327-29 (3d Cir. 2010), *cert. denied*, 131 S. Ct. 1489 (2011). Furthermore, we note that Federal Rule of Civil Procedure 60(b) is a *civil* procedure rule, which does not apply to criminal proceedings. *See* Fed. R. Civ. P. 1 ("These rules govern . . . civil actions and proceedings[.]"); *United States v. Mosavi*, 138 F.3d 1365, 1366 (11th Cir. 1998) ("Rule 60(b) simply does not provide for relief from judgment in a criminal case."). Finally, we note that even if Baskerville had properly appealed, the District Court lacked jurisdiction over the motion, as it was divested of jurisdiction by the pending appeal of the Rule 33(a) motion. *See Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982).

states that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a).  In order to show that the interest of justice requires a new trial in this case, Baskerville must show that the evidence the government failed to disclose was "material either to guilt or to punishment[.]" *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *see also Giglio v. United States*, 405 U.S. 150, 153-54 (1972); *Saada*, 212 F.3d at 216.  Evidence is not material unless "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Reyeros*, 537 F.3d 270, 281 (3d Cir. 2008) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

Baskerville fails to show that the DVRO evidence was material to his guilt.  First of all, it is clear that even if Baskerville had possessed the information about Snowden's DVRO, he would not have been able to cross-examine Snowden about it at trial, because, as the District Court made clear, the evidence was not indicative of Snowden's veracity pursuant to Federal Rule of Evidence 608(b), and even if it were somehow relevant, any probative value was far outweighed by the risk of prejudice pursuant to Federal Rule of Evidence 403.  Evidence of a DVRO nine years prior was simply not material to Snowden's testimony in Baskerville's completely unrelated drug conspiracy trial.

Second, even if the evidence were somehow indicative of Snowden's veracity, the alleged misconduct of a single officer would not cast enough doubt on the overwhelming evidence against Baskerville to produce an acquittal.  None of the testimony that

5

Snowden provided was critical to Baskerville's conviction. Thus, even if Snowden had been impeached, Walker's testimony, combined with the wiretap recordings presented at trial and the heroin seized from Baskerville's minivan, demonstrated overwhelming evidence of Baskerville's guilt. Here, if the DVRO had been disclosed to Baskerville prior to trial, "there [is] no reasonable probability that the outcome of the trial would have been different" and thus, "[i]t follows that the government's failure to disclose the information does not require a new trial." *United States v. Thornton*, 1 F.3d 149, 159 (3d Cir. 1993) (internal quotation marks omitted).

IV.

For the foregoing reasons, we will affirm the judgment of the District Court.